In the United States District Court
for the Northern District of California

FILED
08 JUL 23 PM 4:12
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Antonio Scott     Petitioner

v.

Tom Felker,     Respondent

C07-4279 CRB(AP)

Traverse

Petitioner provides hereby this Answer to the Petition for writ of habeas corpus:

I.
Custody

Petitioner is unlawfully in custody of California Department of Corrections pursuant to a invalid Judgement and Commitment entered June 25 2004 in Alameda County Superior Court, case number C-144915, upon his convictions following a Jury trial of Carjacking in violation of California penal code section 215, subdivision (A), False imprisonment in violation of penal code code section 211, Kidnapping in the course of Carjacking in violation of california penal code section 209.5 subdivision (A) and Kidnapping for robbery in violation of california penal code section 290, subdivision (B)(1). the Superior court sentenced Petitioner to state prison for an indeterminate term of life with a maximum 14 years before parole eligibility.

II.
Procedural History

On April 19 2004 a Jury found Petitioner Guilty of carJacking False imprisonment, Kidnapping in the course of carjacking, False imprisonment and Kidnapping for robbery.

On June 24 2004 the Superior court sentenced Petitioner to an indeterminate term of life with a maximum 14 years before parole eligibility.

On May 31 2006 the court of Appeal, First Appellate District Affirmed petitioners convictions in an unpublished opinion.

On September 13 2006 the california Supreme court denied review.

On September 7 2007 Petitioner filed a Petition for Habeas Corpus in this court.

On January 9, 2008 this court issued an order to show cause.

### III

### Procedural Issues

Petitioners claim is exhausted at supreme court level.

The Petition is timely within meaning of 28 USC 2244(d)

### IV.

### Denial

Petitioner denies each and every allegation of this petition excepting only those matters Admitted in this Traverse Accompanying memorandum of Points of Authorities incorporated herein by reference. In particular the petitioner asserts his claim that evidentiary and instructional error in connection with the Admission of uncharged crimes denied petitioners right to due process.

### V.

Petitioner submits herewith portions of the state trial record and appellate court proceedings already filed.

### Conclusion

For all the reasons stated herein but not limited thereto this evidentiary hearing or writ issued or dismissal in full be granted.

Respectfully submitted

Date: 7-21-08

Antonio Scott
In Propria Persona

In the united states district court
for the Northern District of california

Antonio scott
            petitioner

- Vs -

T felkor
            respondent ~

CASE NO CO-07 - 4279 CRB-P
TRAVERSE to the
Order to show cause

# TABLE OF CONTENTS.

Statement of The Case   1

Statement of Facts   2, 10

Standard of Review   11, 12

Argument

The State Appellate Courts Decision did Violate   13, 14, 15
he Due Process Rights of The Petitioner.

Constitutionaly The court errored in the Sentencing of   16, 17
; the Defendant to Both Kidnapping And False Inprisonment
because it constitutas Double Jepardy.

The Alleged Use of A Deadly Weapon is Reversable as Pursuant   18, 19
he Appellate court "A Replica does not meet meaning of Cal
enal code 120 22 subd. (B)(1)

The court Erroneously Applied 211 Standard Degree Robbery where the   20, 21
provision of 211 P.c elements weren't met to meet 211 Standard
Violates Defendants Due Process And Equal Protection clause
s Reversable.

The Jury was inproperly Instructed as to use of Common Scheme   22, 23, 24
and Plan thus Violated Petitioner Due Process Rights.

CONCLUSION   25, 26

# Table of Authorities

## Cases

Page

Earl v. Supra 1167 — (12-)

Earp. v. Ornoski
31 F.3d 1158-1167 (9th cir 2005) — 11

Estelle v. Mc Guire
02 U.S. 62, 67 (1991) — 15

Keeney v. Tamayou Reyes
09 U.S 1,5. (1992) — 11

Tayor supra 1167 — 12

Tayor v. Maddox
06 F.3d 992, 1007 (9th cir 2004) — 12

People v. Carpenter (1997) 15 cal. 4th 312 — 4 And 27

Townsend v. Sain 372 U.S 293 (1963) — 11

People v. Catlin (2001) 26 cal. 4th 81, 146-147
09 Rptr 2d. 31, 26. P.3d 357] — 22

People v. Alcala supra 36 cal. 3d At P.636 — -15

People v. Greaham (1969) 71 cal. 2d 303, 327-328 — 19

People v. Reid (1982) 133 cal. App. 3d 354-365 — 18

Reid supra 133 cal. App. 3d. At P.365 — 19

People v. Ewoldt (1994) 7 cal. 4th 380 — 13

Table of Authorities (continue)

Cases                                                                    Page

People v. Praso (1987) 130 Ca .3d 669                                      4

People v. Thornton supra 11 cal.3d At P.756                              15

People v. Watson (1956) 46 cal. 2d 818-836-837                           15
[199 P.2d 243]


## Statutes

Penal code 209.5
Penal code 209 Subd (B)(1)
Penal code 215 Subd (A) 211
Penal code 12022. Subd (B)
Penal code 667 Subd (A) (1)
Penal code 667 Subd (E)(1)
Penal Code 1170 .12
Cal. Penal code 12022 subd (B)(1)
Cal Penal code Section 211 Pc
CBA Standards

## Other Authorities

Evidence code 314 (A)
Evidence code Section 1101(B)
1.5 Ans code Section 211
Cal const ARt v . §§13
CALJIC 250
Exhibits  A thru c

1  On September 13, 2006, the State Supreme court de-
2  nied review.

3
4  On September 7, 2007, Petitioner filed the instant
5  Petition.

6  On January 9, 2008, this court issued an order to
7  Show cause.

8  June 4, 2008, Petitioner motion for a extension of
9  time was Granted by this court, Petitioner was order-
10 ed to file a traverse by no later than July 31,
11 2008.

12
13           Statement of Facts
14

15  Petitioner take the statement of facts from the
16 decision of the state appellate court, Answer to order
17 to Show Cause, And From the Record.

18

19  At trial, the Jury heard evidence of three different
20 incidents of carjacking, Kidnapping, False imprisonment
21 by violence and Robbery offenses in East Oaklans
22 in mid-to-late December 2002, against three Separate
23 Man, uncharge offense Santiago Buenrostro, Both
24 charged offense's against Brigido Obregon and Arte-
25 mio Saucedo. Petitioner was charged and convicted
26 of offenses only against Obregon, and Saucedo.
27 Before trial, on march 18, 2004, the court granted the
28 D.A.'s motion       to evidence code Section 1101(b)

1

# Statement of The case

Except as noted, For the Purpose of this Petition Petitioner adopts the introduction of the Deputy Attorney General Answer to "Answer to order to show cause." I'm going to Provide an over-view.

The Prosecutor charged Petitioner with two counts each of aggravated kidnapping, carjacking, second degree robbery, and false imprisonment by violence (Pen Code. §§ 209.5, Subd. (a), 209, Subd. (b)(1). 215, Subd. (a), 211. 23d charges arose from two incidents:

December 16, 2002 – Victim Brigido Obregon; December 24, 2002 – Victim Artemio Saucedo. The information Further alleged use of a Replica Assault Weapon as a deadly weapon. (12022, Subd. (b)(1) and a Prior second degree Robbery conviction as both a serious Felony and strike (667. Subd (a)(1), 1170.12, Subd. 667. Subd. (e)(1). (1 CT 7-16, 147-148.)

On December 27, 2002 Petitioner was arrested for the above mention offenses. RT 96, line seven.

On August 22, 2003, the Prosecutor dismissed one kidnapping charge against Victim-Artemio Saucedo. RT 147-148

2

1  on February 26, 2004, the Prosecutor filed a motion
2  #000174. The People mation "People's memorandum of
3  Points And Authorities in Support Admitting uncharged
4  conduct under Evid. Code Sec. 1101(b) The People
5  ~~the~~ Motion to show Petitioner common Scheme or Plan
6  and intent.
7

8   on April 9, 2004. The Jury convicted Petitioner on
9  all the remaining counts and Found the deadly Wea-
10  Pon allegation true. RT 308-315. Petitioner waived
11  his right to a Jury trial on the Prior conviction
12  allegation, the court found it true. RT 246-306-307.
13

14   On June 25, 2004, The Court dismissed count 3.
15  a Violation of 215 Subdivision (a), Carjacking; and
16  dismissed count 5. a Violation of 236 of the Penal
17  Code, False Imprisonment with force and/or
18  Violation. RT 651. The Court Sentenced Petitioner
19  to State Prison for an 31 to Life term. RT 343-348.
20

21   On May 31, 2006, the State court of appeal affirmed
22  Petitioner's convictions. ~~convic~~
23

24   On May 31, 2006, The First Appellate District
25  Concluded Petitioner sentence was improperly enhan-
26  ced Pursuant to Deadly or Dangerous Weapon use
27  Allegation. Penal Code Section 12022, Subd (b) Was
28  Stricken.

3

Subdivision C to introduce evidence. In their case in chief, regarding an uncharged crime against Buenrostan conduct could be admitted at trial to show a common scheme or plan and intent. At the hearing, the Victim was unable to give any description of the two black males and one black female who were allegedly involved with the incident. In the two charged incidents, Obregon alleges there were three African American males and one African American female, Victim Sauceso alleges it were one African American male and two African American females.

The alleged in court identification made by Mr. Obregon, that the suspect, "had to be number 5 or 6" in a photo line-up of 6 individuals (Preliminary hearing tx. P. 11) This identification is unreliable, People v. Prado, (1982) 130 Ca 3d 669.

The court relied heavily on People v. Carpenter (1997) 15 Cal. 4th 312. Petitioner felt that Carpenter is distinguishable on major points. The ballistics evidence was clear in Carpenter that the charged and uncharged murders were committed with the same weapon. This strongly leads one to conclude that the murderer was the same Person. Secondly, although one set of murders were not charged in the case at trial, they were Pending in another Jurisdiction. -

The court seems to say that because there was little to connect Defendant with the uncharged crimes, they would not cause a Juror to vote guilty on the charged case, Just because the similar murders were introduced. All of the Victims were shot in the head at close range in a remote hiking area.

4

A. The Charged Offenses

1. December 16, 2002 incident involving victim Brigido Obregon.

The victim alleges On 12-16-02, at about 6:20pm He was at the Pac-N-Save Market on Hegenberger RD, walking through the parking lot towards his truck a '85, Chev Blazer, two Door, white, License Plate #KMJ174 CA. As he was trying to get inside his vehicle, two male Black men approached him from behind and put a gun into his back, as He turned around a male black was holding a chrome colored semi-Auto Gun, "maybe a 357 Magnum. About 20 Years old, 5'10," 200 pounds, medium Black hair with twist, and wearing a white colored rag with flowers on it, over his face. He said, He was told to get inside the truck and give up his Car Keys or He will be Killed. The second male black Described, as, 26-28 yrs old, 5'9, 220 LBS, Dark Skin Complexion, small mustache, wearing a Baby Blue sweat shirt and a Black Baseball cap, pushed him into the back seat, Held his head down towards the floor and got into the back seat with him. A third male black, about 22 yrs old, 5'5, 160 LBS, Short cut hair cut, Dark Skin Complexion also Got into the back seat with him and set down next to him, and held his head down. The two guys in the back seat with him and went through his pockets, and took his money, Rings, chain, cell-phone, beeper, wallet, and credit cards. The suspects drove off with victim Obregon but he could not see where they were going because he was told to keep his head down.
The suspects drove around for about Ten minutes and stopped at a apartment complex with about three-four units Three of the male suspects took Obregon in a Downstair Apartment and put him inside a bedroom, that has magazine pictures on the wall, A mattess on the floor with clothes, Garbage, Pipes, Dirty clothes all over the floor. And the room smelled very bad. They kept him in the room for about twenty-two Hours. And anytime He stood up, the third male black would come inside and say don't move or He will Kill him. The bedroom window was covered with a piece of sheet-Rock. He could not see out. The room was dark. The first Guy would come into the room and ask him for his pin number to his credit cards, so they could get money out his Bank account. All four of the suspects offered

him crack cocaine, weapons, and other purchases.
The whole time he was asking them to let him go, since
he gave them everything. Around 5:00 PM the next day,
they took him from the apartment and put him in his
truck and drove for about five minutes, and was told
to keep his head down for five minutes then he can leave.
After five or ten minutes, Obregon drove home. When he got
home to his wife he found out she has already called the
the Police the night before and also today. Victim- Obregon
said he can identify at least two of the suspects if
he saw them again, And he was not insured and didn't
require any medical treatment After his captivity.

At trial, Obregon said, During his captivity at the
apartment for about 20 hours, he observed on two occasion
through the open bedroom door the the man in the bandana
without his disguise for a few seconds. Obregon did not
identify Petitioner as the man in the bandana from
a photo line-up about a week after the incident.
(. . . . . . . . . . . . . . . . . . . . . . . . )
Three months later, on March 3, 2003, When shown
the same photo display at the Preliminary Hearing,
He still couldn't identify Petitioner. Instead, he choosed
two males out of (6) photo's as possibly being the ass-
ailant, one of whom was Petitioner and the other
was of another Black male. After leaving court that
Obregon and Saucedo spoke to each other outside on
the court room elevator about the case.
A year later, at trial, Obregon unhesitatingly identifies
Petitioner as the man wearing the disguise and
handling the Gun. Obregon also testified that People's
Number 8 (black Paintball Gun) was the weapon used in
the offenses, and an arresting officer also describes
the weapon (People's 8) as an assault type Pistol that shoot
paintballs but not bullets. [See exhibit statement of Obregon
exhibit 'A']

2. December 24, 2002 Incident Involving Victim Artemio Saucedo.

On December 24, 2002, at around 6:45 Pm Victim Saucedo drove his ford Thunderbird to look for an apartment on 89th Avenue - in East Oakland, in response to a Ad he saw in a market store, He called the number and spoke to a woman who called her self "Angie, she told him to go to the 1460 block on International. When he got there, He went to apartment (4). He went inside the apartment were a man and two women. Saucedo described one of the female as a black Girl, about 25 Years old, About 6 feet tall, I arlose Build, short black Hair, brown eyes, And a black man about 35 Years old. About 6 feet tall, Heavy set. Saucedo said the man pulled out and pointed a Gun at him, He said the Gun looked like A machine Gun. The gunman told the heavy set woman to search him, and she took his wallet and car keys. Saucedo alleged at one point someone knocked on the front door and he was hastily ushered into a bedroom with a mattress on the floor and the window covered by a Piece of Sheetrock. There, the Gunman demanded his wallet, ID card and Bank cards. After obtaining his Pin number, the gunman left the apartment, leaving the thin woman alone to guard Saucedo After about 20 minutes, the thin woman fell asleep, He than ran out the room and out the apartment to his car, but when he got outside he didn't see his car. So he ran all the way home and called the Police from there. "No one was arrested that day, at the apartment."
   On December 30, 2002, Saucedo identified Petitioner from a photo lineup as the Gunman also identified Sandra miller as the heavy-set woman who took his wallet and car keys. At trial, Saucedo identified the black Paintball gun (People's 8) as the gunmans weapon, He also identified Petitioner at trial as the Gunman at the apartment.
[See exhibit statement of Saucedo, Exhibit 'B']

B. Uncharged Incident Involving Victim Santiago Buenrostro.

On December 16, 2002, Not on December 15, 2002, Santiago Buenrostro alleges at or about 9:00 PM he was driving home on East 14th Street towards San Leandro in his blue 1989 Toyota Corolla on International Boulevard when he stopped at a cross-walk at 85th Ave to let a Male Black walk across the street. All of a sudden a black Guy jumped into the back seat from the drivers side, Grabbed him by the Neck and pulled him back in the seat and put a gun to Buenrostro's head. He noticed the gun was a "big black revolver." Another man got in the rear passenger side door and a woman got into the front passenger seat, and said to drive away fast. All were African-American. Buenrostro was ordered to make a right turn and after a few blocks told to stop. During that time, His assailants took his wallet, watch, credit card, and rings as all his assailants were hitting him with their hands and with the gun. The assailants pulled him into the back seat. The guy right behind him got into the drivers seat and drove away. The assailants drove around for about "twenty or thirty" minutes before they stopped at what Buenrostro took to be an ATM machine, because the female and male assailants in the front seat would get out and the guy in the back seat would stay with me while they try taking money out what he think was a WellFargo ATM machine on Bancroft and 73rd Ave in East Oakland. They asked him for his PIN# to his bank card. The female assailants went and tried to get money but she came back and said the number didn't work. They all started beating him, asking for the correct PIN#. After about a hour the car drove off. Buenrostro said they continue to beat him until, the car stopped somewhere in "West Oakland" they pulled him out by his feet into a yard and threw him on the ground. They were all beating him at this time. One guy started to choke me and smash my face into the mud and punched and hit him, Buenrostro pretended to be unconscious. They all stopped beating, choking him and got into his car and drive away. He then stood up and went to the first house he saw to call the police. At trial, Buenrostro said at one point while he was driving the car, He tried to open the car door to escape. The man behind him struck him on the back of the head with the gun, and the woman in the passenger seat punched him on the cheek with her fist. Buenrostro identified none of his assailants. He could not identify Petitioner or co-defendant Sandra Miller as one of the assailants either at trial or from an each photographic line-up. Nor was he able to give a height and weight description to the police. [See exhibit statement of Santiago Buenrostro. Exhibit "C."]

On December 18, 2002. Oakland Police officer John Cowles went to apartment 4.1347 89th Avenue on a matter related to his duties on the Beat Health Unit dealing with problem properties in the community. He stated the Oakland Police Department had received several complaints about this apartment being a problem property associated with drug sale/and prostitution. Officer John Cowles was allowed into the apartment to conducted a search by a occupant, Charlotte Johnson. She told officer Cowles she's been staying at 1347-89 Ave #4 with another woman (Debra Monzo) off and on for about 1½ months when officer John Cowles conducted his search in a bedroom in the apartment. Cowles found a vehicle registration document stating the license plate and name of the registered owner (Santiago Buenrostro.) Cowles stated Scott was not present when he searched the apartment, and he had no information Scott lived at that address. (There isn't anything on record showing Scott even lived at this apartment.) Officer John Cowles didn't even question or arrest Charlotte Johnson when he found this vehicle registration belonging to Buenrostro. (She said, "she's be living at the apartment for 1½ months.)(Why put this evidence on Scott ~~~~~~ (3) months later?) Officer Cowles also stated the police has received numerous complaints about the apartment being a problem property associated with drugs and prostitution.

On December 23, 2002. Officer Daniel Sakai spotted the blue 1989 Toyota Corolla, license number 2 RXV 314, belonging to Santiago Buenrostro. Parked in the 1300 block of 89th Avenue. The dissimilarities in this case are numerous: the property that was taken in these robberies/carjackings is merely all the valuables that are always taken during offenses like these. ~~~~~~ Santiago Buenrostro is the uncharged; He was beaten, assaulted, choked, struck with fists, hit on the head with a gun, on various occasions. In the uncharged case, there were 3 perpetrators. In the charged cases there are 4 against Obregon. Three black male's and one female. In the Sauced's offense there was 3 perpetrators. Two black female's and one black male. In the uncharged case there were Two black MALE'S and one black female who took him in the vehicle to a ATM machine to get money out of his account, and he was taken from East Oakland to West Oakland.

In both of the charged cases here, the victim's was kept in the apartment at 1347 89th Avenue. While the perpetrators allegedly used the ATM cards of the victims. Lastly, the fact victim Obregon couldn't identified Scott as the suspect that robbed him when shown a photo line-up twice. The uncharged victim (Santiago Buenrostro) when shown a photo line-up with Scott in it (nor could he identify ms. Miller in a photo line-up.) March 3, 2004.

In the two charged offenses, there is no allegation of violence
by the perpetrators and on top of that, the fact that the
registration for the uncharged victim's vehicle was found in the
apartment that Petitioner was arrested in (Not on his person,
but within the apartment) is not helpful in view of the testimony
that the apartment where Petitioner was arrested with a prostitute.
The place of the apartment was a place of prostitution and
drug sales/use. Anyone could have placed the car registration in
the apartment, or sold the vehicle to any of the two females that
officer Cowles ignored to investigate when they claimed that
they lived in the apartment. There was no indicia, or men's clothes
or anything presented in court to connect Petitioner with the
address, other than the fact that he was found there.

On December 27, 2002, officer Parkinson found Saucedo's
light blue Thunderbird parked outside 1347 89th avenue, an address
Parkinson associated with suspected carjacking activities. This
information he received from drug users. Officer Parkinson and
other officers subsequently went up to apartment 4 at that
location they were allowed in "again" by the occupant,
Charlotte Johnson." Petitioner and Sandra Miller was found
in the bedroom. Petitioner was naked and Sandra Miller was
in her panties and bra laying on a mattress on the floor
and the window was covered with sheetrock. At the foot of the
mattress on the floor was a small black pistol grip type assault
gun, together with a smaller handgun.(FN3) The Police handcuffed
Petitioner and this prostitute Sandra Miller. The keys to
Saucedo's Thunderbird were found in a pocket of Miller's jacket.
Later that day, officer Sadallah interviewed Petitioner at the
Eastmont Police station and Petitioner was wearing the large
gold ring with a star of David that Brigida Obregon alleges
was stolen from him. At trial, Obregon identified the
ring as the one taken from him.

FN3. There is no evidence in the record connecting this handgun to
any of the crimes at issue. No evidence connecting Petitioner to the
uncharged crimes. No evidence connecting Petitioner to Artemio Saucedo
but his word against mine. No evidence connecting Petitioner to Obregon
Brigida Obregon but me having his ring on my finger. It is in the
assault type gun. That was found in the apartment at the foot of the mattress
and my finger print wasn't on the assault type gun. And the fact, Petitioner
did not live there. Petitioner did not testify in his defense. In closing
argument, defense counsel attacked the reliability of Obregon's and Saucedo's
identifications of Petitioner and argued the prosecution failed to place
Petitioner at the scene of the crimes beyond a reasonable doubt and
that Police were tipped off about Petitioner by a drug user/dealer
informant who was a possible may have been the Perpetrator him-self.

## STANDARD OF REVIEW

PETITIONER AGREES that RESPONDENTS standard of REVIEW contains an ACCURATE summary of the GOVERNING law REGARDING the deference due under AEDPA to state court adjudications on the merits. on the other hand, RESPONDENT omits entirely from it discussion what may be the most important standard of review to be considered at this juncture in the litigation -- the standard this court must APPLY in deciding whether or not to grant PETITIONER an EVIDENTIARY hearing on one or more of the Habeas corpus claims.

A PETITIONER on federal habeas corpus is entitled to an EVIDENTIARY hearing where the petitioner establishes a colorable claim for relief and where the petitioner establishes a colorable claim has never accorded a state or federal hearing on his claim EARP V ORANSKI 481 F.3d 1158-1167 (9th CIR 2005) citing TOWNSEND V SAIN 372 US 293 (1963), KEENEY V TAMAYO REYES 504 US 45 (1992) IN stating a colorable claim, a petitioner is merely REQUIRED to allege specific facts which if True would entitle him to relief Ibid Granted under the AEDPA a federal court is not REQUIRED to order a hearing where the petitioner failed to develop the facts in the state court. IN such cases, the federal court accords a PRESUMPTION of correctness to the facts by the state court and need not hold AN evidentiary hearing unless those facts are REBUTTED BY clear convincing evidence-

On the other hand so "A.E.D.PA deference is due where the state has made an "unreasonable" determination of facts and where a state court makes evidentiary findings without holding a hearing and giving petitioner an opportunity to present evidence such finding clearly result in an unreasonable determination of the facts. Taylor v Maddox 366 F.3d 942 1001 (9th cir 2004)

In sum an evidentiary hearing is required under A.E.D.PA. And an appellate court will remand for a hearing of the district court rules without benefit and where the petitioner establishes a colorable claims for relief, and has never been accorded a state or federal hearing on his claim. Earl supra 1167.

Here petitioner requested an evidentiary hearing at every level of the the state habeas proceedings and each of the courts to which he applied ruled an evidentiary in this court before the court can make any credibility determinations on the facts alleged in the petition and supportive exhibit (21 any controverted "facts" found by the state court while denying a request for an evidentiary hearing - result from an unreasonable determination of the facts. Taylor supra 1101.

the state appellate courts decision did violate
the due process rights of the petitioner Scott.

Evidence used to prove intent where the act is
committed or assumed, (in proving design, the act is
still undetermined. Evidence of identity is admissable
where it is conceded or assumed that the charged offense
was committed by someone, in order to prove that
the defendant was the perpetrator. In People v. Ewoldt
(1994) 7 Cal. 4th 380 ; the supreme court underscored
the importance of these distinctions stating that;
"It is imperative that the trial court determine specifically
what the proffered evidence is offered to prove, so that
the probative value evidence can be evaluated for that purpose.
( Id at p. 406 ) Italics added.)

Here the court admitted the uncharged incident to show
prejudicially Scott engaged in a common scheme and plan
for intent and identity purposes, Scott never made any
statements or tried to explain his presence at the house
nor was it required of him being Scott's presence was
a coincidence and his exercise of his fifth amendment
rights is not can be assumed built only an exercise
of his constitutional entitlement as is guaranteed to all.
There was none exist any material evidence that ties
Scott to the names or uncharged crimes. This fact
scott was engaged in a sexual encounter only serves
to reinforce the unlikely hood he was a participant in
the crimes he was now charged with.

the speculative nature of this prosecution was clear
that its and the court admittance of the highly
prejudicial value was inadmissable propensity evidence
that provided no relevant probative value but served
to deprive scott of due process of law.

Pursuant to evidence admissibility 314 (1)
When reviewing the admission of evidence of
other offenses a court must consider the materiality of
the fact to be proved or disproved the probative value
of the existance of any rule or policy requiring
exclusion Even if the evidence is relevant. Because
this type of evidence can be so damaging, if the very
connection between the uncharged offense and the ultimate
fact in dispute is not alone, the evidence should be
excluded for the basic protection of the accused's own
constitutional rights. the basic premise is that the admit-
tance of common scheme to the jury was harmless yet
the admittance of this fundamentally flawed arguement
where the jury was left to interpret its probative value
and to apply it to the tier of facts in evidence was
reversible error and prejudicial to the petitioner scott,
Here the jury was not instructed as to how to apply this
standard and how it legally applies to the question of the
Identity where no Identification could be made for a vast
amount of time where the likelyhood after 15 months,
finally at an open court proceedure after conversation with
witness victim OBRYON, but in the elevator violating
the court order of no communication he could suddenly Identi-
-fy, the petitioner scott, all this served to prejudice
the petitioner scott,

The fact that both crimes were committed by two men 1 woman is grossly insufficient as a criminal signature. Innumerable crimes indeed innumerable are committed in concert by two men. That the crimes varied two women one man to three men two woman that single mark does completely fails to set the charged and uncharged offenses apart from the other crimes of the same general variety. People v Thornton supra 11 cal. 3d at p. 756.

The potential for improper and prejudicial impact in contrast is strong and clear the defendant didn't testify and the Jury knew nothing about his appearance for the kidnapping and robbery, the erroneous admission of other crimes is prejudicial i.e. it appears reasonably probable absent the error a more favorable result would have been reached. People v Alcala supra 36 cal. 3d at p. 686; People v Watson (1956) 46 cal. 2d 818-856-857 [299 P. 2d 243].)

The miscarriage of Justice (cal court act VI §§ 13.) it is clear a reasonably probable that a more favorable result to the appealing party would have been reached in absence of error committed by the court as is contended by Scott. For fifteenth months the defendant was not identified by neither victims in the uncharged crimes and charged crimes. The trial was fundamentally unfair by the court vague and ambiguous instruction as to use of common scheme and plan as a tool to find built was so prejudicial it amounted to prejudice rendering the conviction unfair see Estelle v. mc Quire 502 us. 62 67 (1991) states the law is chaos to the fundamental fairness and fundamental conceptions of Justice that lie at the base of our civil communitys sense of fair play and decency.

Constitutionally the court Erred in the sentincing of the defendant to both kidnapping and false imprisonment because it constitutes double jeopardy.

The court Erred in the sentincing the petitioner to both false imprisonment and kidnapping when both are considered the same crime only one is a lesser degree of the same crime. Kidnapping is a higher degree Thus to charge one with both and try and convict and while out of one single act the charge is compounded raises a constitutional question of due process. The constitutional, Violation of defendants due process and his equal protection clause. The principle of double jeopardy is simple and is distinctive in that it is clear no person shall be convicted or tried for the same crime twice nor shall any state abridge this Amendment under any circumstances nor shall any person be held to answer or defend himself under the same circumstances. The Court here illegally tried and convicted petitioner of the same crime twice without any concern for his constitutional rights. The court Erred severely in that it failed to apply state and federal law with respect to this case.

16

The court instead of following the state rules of court or constitutional principles that are a fundamental and essential part of the Judicial process. this has been put in place to protect the rights of all whom seek out Justice in avenue which is embodied in the set of principles that are the Equal Dispensement of Justice will be part of the issue the court with constitutional protections Guarenteed. All whom are charged with a crime shall enjoy as an instrument the fair and Equal protection of law.

There is But one Question of law and that is how the court acted capriciously in light of Judicial principles the court acted without any penological Justification for the very arbitrary actions which are reversable errors and can not stand on Review on Habeas Corpus, this wanton act served to preludice the petitioner to such degree mere sanctions will not erase the unreasonable action subjected to and it was through the courts over zealousness toward uptaining a conviction by any means. the court Abandoned its sound principles and its obligation to a parties Involved, this fact appeared to slip the courts Careful observation Beng it intentionally closed its eyes in the disbursement of Justice.

1  The alleged use of a deadly weapon is
2  reversable as pursuant the appellate court
3  a replica does not meet meaning of cal
4  penal code 120 22 subd.(B)(1)

_____

6  Petitioner contends the evidence was insuffi-
7  -cient to prove the section 120 cc subdivision (B)
8  Allegation he used a deadly or dangerous
9  weapon in committing the charged offenses.
10 He asserts a paintball gun is incapable of firing
11 Bullets, unlike a real gun is not a deadly or
12 dangerous weapon as a matter of law. The
13 people on the other hand contend it is.
14 For the purposes of section 120 22 subdivision (B)
15 there are two categories of dangerous or deadly
16 weapons: first there are instruments like
17 Guns and dirks that are weapons in the
18 strict sense of the word and are "dangerous
19 or deadly" to others in the ordinary use for
20 which they are designed and may be said as a
21 matter of law to be dangerous or deadly weapons"
22 people v Reid (1982) 183 Cal. App. 3d 354, 365
23 Second there are instruments "which are not
24 weapons in the strict sense of the word, But
25 which may be used as such, such as razors
26 pocket knives.... hammers and other sharp
27 or heavy objects. These are not weapons in
28 the strict sense of the word and are not

19

1  deadly or dangerous to others in the ordinary
2  use for which they are designed as such
3  that may not be said as a matter of law
4  to be dangerous or deadly weapons....
5  when it appears that a instrumentality
6  other than one falling within the first
7  category is capable of being used in a
8  dangerous or deadly manner, and it may
9  be fairly inferred from the evidence
10 that its possessor intended on a particular
11 occasion to use it as a weapon should
12 the circumstances require, its character
13 as a dangerous or deadly weapon may be
14 established at least for the purposes of
15 that occasion" (Reid supra 133 Cal. app. 3d
16 at p 365 [citing people v- Graham (1969) 71 Cal.
17 2d 303, 327-328].)

18 The court of appeal stated the determinative
19 question was whether there was testimony
20 whatsoever on the capability the paintball
21 gun to inflict great bodily injury, so
22 there is no evidentiary basis on which to
23 apply the rationale here there was no
24 evidence petitioner intended to use it in any
25 fashion other than its intended use which
26 is recreational thus the one year
27 inhancement must be stricken, as the
28 appellate court ruled such should be

19

1  The court ERRONEOUSLY applied 211 standard
2  Degree Robbery where the PROVISION of 211
3  P.C. Elements weren't met to meet 211
4  standard violates Defendants DUE Process
5  AND EQUAL protection CLAUSE is reversible

7  the court applied the wrong standard to
8  the meaning of 211 P.C.. Accordingly BY
9  Definition of 211 P.C. one must Be deprived
10  of property By means of fear or Harm with
11  A Belief of Imminent danger to their person.
12  Here the Element of fear could not Be Even
13  Reduced from petitioner where petitioner is
14  perpetration of crime welded on a replica
15  which by the appellate court definition
16  was not a dangerous or deadly weapon.
17  thus the likelihood of fear of Imminent
18  fear or threat of harm is highly unlikely
19  to have Been a determined factor and is
20  with the Question of its VAGUENESS a
21  "mixed Question of law." it can only Be
22  satisfied by a thorough scrutinization
23  of the law and how it was applied to this
24  case in order to get the proper Interpretation
25  of the law. By Definition the court acted
26  Erroneously in its application of the
27  proper standard to apply the law as
28  it is written without undue prejudice.

1   In the Defendant in a criminal proceeding.
2   the issue of the mixed question of law
3   is clear and must be resolved by this
4   court in order to afford a fair and
5   equal administration of Justice.
6   No time in the entire testimony was
7   it stated the victim feared for his life
8   due to physical harm or was physically
9   abused by the perpatrator at any given
10  time. the court need not be a idle
11  bystander with a minute role of
12  casual observer but take a definitive
13  role as overseeing whom county
14  dispenses justice to all those within its
15  jurisdiction. the court here took a
16  less than neutural side and as a result
17  petitioner was illegally tried for the
18  crime and the jury illegally instructed
19  as to a crime of which elements were
20  not made thus its case could not stand
21  to the scauruty of a legal question
22  of law thus it is more tensable to
23  believe that the states argument is
24  lacking in that it is deficient and is
25  totally without merit and substance and
26  must be reviesed and writ issued to
27  the order to show cause in order to
28  protect the fundamental rights of petitioner.

21

THE JURY WAS INPROPERLY INSTRUCTED AS TO
USE OF COMMON SHEME AND PLAN THUS
VIOLATED PETITONERS DUE-PROCESS RIGHTS

the instruction merely reiterates that the Jury may but is
not required to draw inferences described people v Catlin
(2001) 26 cal 4th 81, 146-147 F.109 cal rptr 2d 31, 26 P 3d 357
a permissive inference "allows -- but does not require -- the
tier of fact of draw the inference.

the prosecution has the burden to establish by preponderance
of evidence that the defendant committed the uncharged crimes
it is reasonably likely a Jury could Interpret the instructions
to authorize conviction of the charged offenses based on
on a lowered standard of proof. the people had the burden
of proving Defendant Guilty beyound a reasonable doubt.
any other ruling would have reduced the evidence to
reasonable doubt a nullity. In addition the circumstances
could not be reconciled with any other rational conclusion
[CALJIC 2.50] which is merely another way of restating the
reasonable doubt standard [see people v Carpenter (1997)
15 cal 4th 312 - 383 [63 cal rptr 2d 1. 935 P 2d 708].)
The Jury thus would have understood that a conviction
that relied on Inferences to be drawn from the
defendants uncharged crimes would have to be proved
Beyound a reasonable Doubt,
this was not the case here where the Jury was left
to interpret the law as would a Blind man to have
care free a automobile without incidents, would he
sure be catastrophic and it is clear that the Jury
would have come to a more favorable decision had
the people instruction been given,

the admission of argument as to the validity of material evidence was illegal and violated the due process of the very petitioner as it served to prejudice him in that the court allowed the sitting prosecutor to admitt unsupported conjecture as to the petitioners guilt in seperate and uncharged crimes as a basis to impeach the credibility in a fact finding process with an Introduction of prejudicial material which served only to prejudice the petitioner. the foundation) was built on an fraudulent principle that ignoring the basic rights and principle of both us and California constitution is permissable and that the A.B.A standards mean little if anything here, the prosecutor acted capriciously and with an regard for the institution of the law and justice, instead he choose to violate the fundamental premise that Constitutional safeguards put in place are to prevent the undue and prejudary application of vindictive principles to gain an illegal conviction where under different circumstances a conviction would be improbable due to overwelming factors such as the law prohibits such admission of prejudicial evidence., the fact that the court allowed the admission as well the illegal Instruction is not mere harmless error, But rather a fundamental miscarrage of justice which if not saved by habeas corpus the damage will be irreparable.

23.

Contrary to the Assumptions of the H.G. it is clear By the record that the direct Intent of the D.A. was to contaminate the Jury with **unsupported** and **substantiated** Claims and illegal points of law as it pertains to the Identification of the perpatrator of uncharged crimes Being used as a fundamental Grounds to determine the Validity of **ASSERTED** allegations to prove with undeniable Certainty of Guilt or **INNOCENCE**. Contrary to law it is impermissible to argue unsupported claims toward a fact finding Tier of facts toward its determination of facts not in Evidence. Here the D.A. Vigorously Argued the unproven facts of petitioners guilt or where By law A determination must be made to support a theory of Guilt to prove culpability where it deals with the Admissi- Ability of facts not admitted into evidence. Here the prosecutor Egregiously acted with no **REGARD** for the Constitutional Amendments which serve as a foot hold for the Justice and Equality of Each Citizen of the United States of Americans and shall not be **Abridged** without amendment of the **ORIGINAL** amendment or high Courts ruling as to it validity.

24

IN CONCLUSION it is clear from the record petitioner was severely prejudiced by the lower courts actions and that the error committed falls far from harmless and amounts to a fundamental miscarriage of justice which only by constitutional protections will this petitioner be saved from the egregious and arbitrary acts. the capricious and wanton disregard for the constitution or its foundation and intent and purpose to denagrade and debase its worth by the allowance of prejudicial nature of the prosecution and court can not be left up to its own to rectify its mistake where it grossly violated the basic premise that each party has the constitutional right to a fair and non-biased hearing of facts and to utilize counsel as his diligent advocate, to confront his accusers all in a legal form to be tried by a jury of his peers and to appeal from judgement where violation of both Cal and U.S. constitution occur. the arguement of the people is that no constitutional violation has occured yet the record is clear and petitioner

has pointed out all the inconsistents and all the
Gross violations of patitioners constitutional rights.
Patitioners right to a fundastned Hearing is clear and
consise. it is wanted that the court issue an evidentory
hearing and apaly the reboce standard of law, and
for issuanced of a writ of Habens Preous to reverse
in full to pertect the interest of the Judicial
Process.


respectfully submitted on this ___JULY___ day of __21__
_____ 2008 at High Desert State prison.


Antonio scott

In Pro Per





**STATEMENT**
**Oakland Police Department**   536-200-1 (6/93)   Page 1 of 3

| | Offense/Crime | 2. Report No. |
|---|---|---|
| 1. Complainant OBREGON, BRIGIDO | 209 PC | 02 - 117948 |

| 3. Name of Person Giving Statement | Sex/Race/DOB | ■ Complainant □ Suspect □ Driver |
|---|---|---|
| OBREGON, BRIGIDO | M/H/19 AUG 60 | □ Reporting Person □ Witness |

4. Residence Address   City/Zip   Phone
OAKLAND

5. Employment (Name, Address, Phone, Occupation, Work Hours, Days Off) or Supplemental Information * Unemployed or Transient

| 6. Statement Taken By | Serial No. | Date | Time Started - Completed |
|---|---|---|---|
| M. MILLER | 8444P | 17 DEC 02 | 1655 - 1815 |

7. Location Where Statement Taken   Names, Addresses of Persons Present During Statement

**FOR VEHICLE COLLISIONS ONLY**

| 8. License No. | State | Veh. Yr. | Make | Model | Type | Color(s) | Driver License No. | State |
|---|---|---|---|---|---|---|---|---|

| 9. Registered Owner | | Address | City/Zip | Residence/Business Phone ( ) |
|---|---|---|---|---|

**ADMONITION:** You have the right to remain silent. Anything you say can be used against you in a court of law. You have the right to talk to a lawyer and have him present with you while you are being questioned. If you cannot afford a lawyer, one will be appointed to represent you before any questioning if you wish one.   *Subject's Initials*

**WAIVER:** Do you understand each of these rights I have explained to you? _____

Having these rights in mind, do you wish to talk to us now? _____

**Statement:**

MY NAME IS BRIGIDO OBREGON ON 12-16-02 AT ABOUT 6:20PM I WAS AT THE PAC N SAVE MARKET ON HAGENBERGER RD, WALKING through THE PARKING LOT towards MY TRUCK A 85, CHEV, BLAZER, two DOOR, WHITE, license plate # ILMJ174 CA. AS I WAS TRYING TO GET IN- SIDE OF MY VEHICLE, TWO MALE BLACK MEN APPROACHED ME FROM BEHIND A PUT A GUN INTO MY BACK, AS I turned AROUND A MALE BLACK HOLDING A chrome colored SEMI-AUTO GUN, MAYBE A 357 MAGNUM, ABOUT TWENTY YEARS OLD, 5'10", 200LBS, MEDIUM BLACK hair with twist, DARK SKIN complexion, LARGE EYES, UNKNOWN CLOTHING, BUT WEARING A WHITE COLORED RAG, with FLOWERS ON IT, OVER HIS FACE, HE TOLD ME TO "GET INSIDE THE FUCKING TRUCK, AND GIVE ME THE KEYS, OR I WILL KILL YOU". THE SECOND MALE BLACK described AS, 26-28 yrs OLD, 5'9, 220LBS, DARK SKIN complexion, SMALL MUSTACHE, WEARING A BABY BLUE SWEAT SHIRT AND A BLACK BASEBALL CAP, PUSHED ME INTO THE BACK SEAT OF MY TRUCK, HELD MY HEAD DOWN towards the floor AND GOT INTO THE BACK SEAT WITH ME, A THIRD MALE BLACK, ABOUT 22 yrs OLD, 5'5", 160LBS, SHORT CUT HAIR CUT, DARK SKIN complexion,

STATEMENT CONTINUATION
Oakland Police Department    536-200-2 (6/93)    Page 2 of 3

2. Report No.

02 - 117948

| 1. Complainant | Offense/Crime |
| | 209 PC |

| 3. Name of Person Giving Statement | Sex/Race/DOB | ☑ Complainant | ☐ Suspect | ☐ Driver |
| OBREGON, BRIGIDO | M / H / 19 Aug 60 | ☐ Reporting Person | ☐ Witness |

STATEMENT:

ALSO GOT INTO THE BACK SEAT WITH US AND SAT DOWN NEXT TO ME, AND
HELD MY HEAD DOWN SO I COULD NOT SEE ANYTHING. THE TWO GUYS IN
THE BACK SEAT STARTED GOING THROUGH MY POCKETS AND TOOK FOUR -
HUNDRED DOLLARS IN CASH, MY JEWELRY, ONE NECKLACE, GOLD, LINK
CHAIN, WITH A CALENDER PENDENT, ABOUT FOUR HUNDRED DOLLARS, TWENTY-ONE
INCHES IN LENGTH, TWO GOLD BRACELETS, ONE LINK CHAIN, ONE ROPE STYLE,
EIGHT INCHES, ONE IS WORTH EIGHT-HUNDRED DOLLARS, THE OTHER IS WORTH SIX-
HUNDRED DOLLARS AND ~~THREE~~ GOLD, ONE HAS A ~~~~ TOP,
THE OTHER HAS A ~~JEWISH~~ STAR AND THE ~~~~ HAS ~~~~.
WORTH, TWO HUNDRED -FIFTY DOLLARS, THE OTHER TWO ARE WORTH ONE -
HUNDRED -FIFTY DOLLARS, MY WALLET WHICH HAD MY WASHINGTON
MUTUAL GOLD CARD, AND TWO DISCOVER CARDS, ONE PLATINUM, AND ONE
GOLD. THEY ALSO TOOK MY CELL PHONE, NOKIA, GREY color, MY PAGER
A MOTOROLA, GREEN COLOR AND MY GUCCI SUN GLASSES. AS THEY WERE
GOING THROUGH MY POCKETS, I SAW A FEMALE BLACK, 25yrs, 5'9", 240lbs
HEAVY BUILD, ~~~~, DARK SKIN COMPLEXION
WITH A HORSE SOUNDING VOICE, SITTING IN THE FRONT PASSENGER SEAT.
SHE WAS SAYING "DON'T HIDE ANYTHING", THEY DROVE AROUND FOR ABOUT
TEN MINUTES IN AN UNK DIRECTION AND STOPPED AT A APARTMENT complex
WITH ABOUT THREE - FOUR UNITS, BRICK IRON GATE IN FRONT, WITH THE
OUTSIDE OF THE APARTMENT PAINTED GRAY. ~~~~
~~~~ THERE, SO I COULD NOT SEE ANY OTHER CARS AROUND OR
TREE'S OR BUSHES, THEY BROUGHT ME INSIDE A ~~~~
AND PUT ME INSIDE A ROOM, THE ROOM HAD SOME MAGAZINE PICTURES ON
THE WALL, A MATTRESS ON THE GROUND COVERED WITH CLOTHES, GARBAGE
PIPES AND DIRTY CLOTHES ALL OVER THE GROUND, THE ROOM SMELLED REAL
BAD, THEY KEPT ME IN THE ROOM

| Signature of Person Giving Statement | Date |
| H. OBREGON | 12-17-0 |

STATEMENT CONTINUATION
Oakland Police Department    536-200-2 (6/93)    Page 3 of 3

2. Report No.    02-117948

1. Complainant    OBREGON, BRIGIDO

Offense/Crime    207 FALSE RC

3. Name of Person Giving Statement    OBREGON, BRIGIDO

Sex/Race/DOB    M/H/19Nov60

☒ Complainant    ☐ Suspect    ☐ Driver
☐ Reporting Person    ☐ Witness

STATEMENT:

For about twenty-two Hours, any time I stood up, the third male Black would come inside and say "Don't move or I'll shoot your ass". The Bedroom window was covered with a piece of sheet Rock, I could not see outside, the room was also dark. The First Guy would come into the Room and asked me for my pin Number, so they could get money out of my Bank Account. The whole house was a mess, Beer cans, garbage every where, All Four of them would offer me crack cocaine, Heroin, Beer and some Food that they purchased. The whole time I was asking them to let me go, since I gave them everything, Around 5:00pm the next day, they took me from the 0.4.0 apartment, Drove For about Five minutes and dropped me off inside my truck and told me to keep my head down For Five minutes then you can leave. When I looked up I was at about 107th av and Bancroft and Drove home, when I got home my wife had already called the police the night before and also today. My wife called my Bank "washington Mutual and noticed several card trans-actions During the time I was gone. One at 9:40pm at East-mont mall BoFA For $40.00, one at 9:38pm Eastmont mall $20.00 Popeye's chicken at 1:22am For $3.80 $72.59 $3.80, one again at Popeye's chicken at 9:43pm For $63.80, I have never seen them before Yesterday, I can identify at least two of them if I saw them again, I will assist in the prosecution. this is a true statement. I was not injured and do not require any Medical treatment. this is a true statement, I thought at two Different times that they would kill me, I was scared For my Life and safety, this is a true statement.

Signature of Person Giving Statement    BC16100 B. OBREGON

Date    12-17-02

**OAKLAND POLICE DEPARTMENT**
455 - 7th Street
Oakland, CA 94607

**O P D ADDITIONAL INFORMATION REPORT**

RD # 02 – 117948

| CRIME | [ ] SUPPLEMENTAL | INCIDENT # | | VICTIM LAST, First, Mid. |
|---|---|---|---|---|
| 209 (B)(1) PC | | 2056 | V1 | OBREGON, BRIGIDO |

| SUSPECT LAST, First Mid. | INCIDENT LOCATION | DATE OF THIS REPORT | ORIGINAL DATE REPORTED |
|---|---|---|---|
| UNK | HAGENBERGER RD | 17 Dec 02 | |

**PROPERTY (and/or NARRATIVE)**

| ITEM # | QNTY. | ITEM TYPE, BRAND, MODEL #, SIZE, COLOR, MARKS, ETC | SERIAL # | VALUE |
|---|---|---|---|---|

LOSS CONT: ITEM # 4, THREE (3) RINGS, GOLD, ONE MILITARY EMBLEM, ONE W/ THREE SMALL DIAMONDS, ONE W/ JEWISH STAR, $ 550.00, ITEM # 5, ONE CELL PHONE, NOKIA, GREY COLOR, PHONE # 325-7856, UNK VALUE, ITEM # 6, ONE PAGER, MOTOROLA, GRN COLOR, UNK MODEL OR S/N, UNK VALUE, ITEM # 7, ONE PAIR OF SUNGLASSES, GUCCI, UNK, @ $250.00, ITEM # 8, TWO CREDIT CARDS, ONE WASHINGTON MUTUAL, ONE DISCOUNT CARD, PLATINUM, UNK ACCOUNT # IN THE NAME OF OBREGON, BRIGIDO, ALL ITEMS WERE TAKEN FROM (VIC) OBREGONS POCKETS.        TOTAL: $ 3,000

Summary:

ON 17 DEC 02 AT ABOUT 1700 HRS I WAS WORKING AS OPD PATROL UNIT 3L30 DRESSED IN FULL OPD UNIFORM AND DRIVING MARKED PATROL VEHICLE # 1007. RADIO DISPATCHED ME TO ▮▮▮▮▮▮ TO INVESTIGATE A REPORT OF A KIDNAPPING, PER YSD OFC H. JORDAN

I HAD RESPONDED TO THIS ADDRESS ON 16 DEC 02 AT ABOUT 2350 HRS REGARDING (R/P) MARIA WHO HAD CALLED STATING THAT HER HUSBAND (VIC) OBREGON HAD NOT RETURNED HOME THAT NIGHT AFTER DROPPING HER OFF AT WORK. TODAY, MARIA AND HER DAUGHTER HAD CALLED STATING THAT OBREGON HAS STILL NOT COME HOME, AND EVERYTIME THEY CALL HIS CELL PHONE, UNK PERSONS PICK UP THE PHONE.

I CONTACTED OFC H. JORDAN AT YSD WHO SAID THAT THEY HAD RECIEVE INFORMATION FROM (R/P) AND HER DAUGHTER (CHARLINE) THAT OBREGON HAS NOT RETURNED HOME AND THAT SOMEONE IS USING HIS BANK CARDS.

UPON MY ARRIVAL AT ▮▮▮▮▮▮ , I WAS MET BY OBREGONS

**OAKLAND POLICE DEPARTMENT**
455 - 7th Street
Oakland, CA 94607

**ADDITIONAL INFORMATION REPORT**

RD # 02 - 117948

| CRIME | [ ] SUPPLEMENTAL | INCIDENT # | VICTIM  LAST, First. Mid. |
|---|---|---|---|
| 209 (B)(1) PC | | 2056  V1 | OBREGON, BRIGIDO |

| SUSPECT  LAST, First. Mid. | INCIDENT LOCATION | DATE OF THIS REPORT | ORIGINAL DATE REPORTED |
|---|---|---|---|
| UNK | 610 HAGENBERGER RD | 17 DEC 02 | |

**PROPERTY (and/or NARRATIVE)**

| ITEM # | QNTY. | ITEM TYPE, BRAND, MODEL #, SIZE, COLOR, MARKS, ETC | SERIAL # | VALUE |
|---|---|---|---|---|

SUMMARY CONT:

DAUGHTER "CHARLINE" WHO ADVISED ME THAT (VIC) OBREGON HAD JUST RETURNED HOME. CHARLINE FACE WAS FULL OF TEARS AS SHE WAS HAPPY TO SEE THAT HER STEP-FATHER "OBREGON" HAD RETURNED HOME SAFELY. SHE DIRECTED ME TO OBREGON WHO WAS INSIDE OF HIS HOUSE, WITH HIS WIFE AND FAMILY MEMBERS, WHO WERE ALSO CRYING AND HAPPY OF HIS SAFE RETURN.

I SPOKE WITH (VIC) OBREGON WHO WAS HAPPY TO BE HOME WITH HIS FAMILY. HE HAD BEEN CRYING, HIS FACE WAS FLUSH AND APPEARED SCARED FROM WHAT HAD HAPPENED TO HIM. OBREGON TOLD ME THE FOLLOWING: ON 16 DEC 02 AT ABOUT 1820 HRS, HE WAS AT THE PAK N SAVE (610 HAGENBERGER RD) WALKING TO HIS TRUCK A 85. CHEV, BLAZER, 2D, WHI, LIC # 1LMJ174 CA, TAKING OUT HIS KEY'S WHEN SUSPECT(S) 1-2 APPROACHED HIM FROM BEHIND, S-1 PUT A GUN TO HIS BACK AND SAID "GET INSIDE THE FUCKING TRUCK AND GIVE ME THE KEYS, OR I WILL KILL YOU", S-2 THEN PUSHED HIM INTO THE BACKSEAT AND ALSO GOT INSIDE THE TRUCK INTO THE REAR SEAT, WHERE S-3 WAS SITTING, AND HELD HIS HEAD DOWN TOWARDS THE FLOOR BOARD.

WHILE IN THE BACKSEAT, S-2 AND S-3 WENT THROUGH HIS POCKETS AND TOOK (LOSS ITEMS 1-8) FROM HIS POCKETS. S-4 WAS SITTING IN THE FRONT SEAT SAYING "DON'T HIDE ANYTHING", S-1 THEN DROVE OBREGONS VEHICLE WITH HIM AND SUSPECT(S) 2-4, TO AN UNK APARTMENT, IN AN UNK LOCATION, WHERE THEY PLACED HIM INTO A ROOM FOR ABOUT TWENTY-TWO HRS

DURING THAT PERIOD, ANY TIME OBREGON WOULD STAND-UP, S-3 WOULD

| REPORTED BY | SERIAL # | WATCH | DISTRICT | SUPERVISOR | SERIAL # | |
|---|---|---|---|---|---|---|
| M. MILLER | 8444P | 3 | 5 | SGT WILLIAMS | | PAGE 5 OF 7 |

**OAKLAND POLICE DEPARTMENT**
455 - 7th Street
Oakland, CA 94607

**ADDITIONAL INFORMATION REPORT**

RD # 02-117948

| CRIME | [ ] SUPPLEMENTAL | INCIDENT # | V1 | VICTIM LAST, First, Mid. |
|---|---|---|---|---|
| 209 (B)(1) PC | | 2056 | | OBREGON, BRIGIDO |

| SUSPECT LAST, First Mid. | INCIDENT LOCATION | DATE OF THIS REPORT | ORIGINAL DATE REPORTED |
|---|---|---|---|
| UNK | 610 HAGENBERGER RD | 17 DEC 02 | |

| ITEM # | QNTY. | PROPERTY (and/or NARRATIVE) ITEM TYPE, BRAND, MODEL #, SIZE, COLOR, MARKS, ETC | SERIAL # | VALUE |
|---|---|---|---|---|

SUMMARY CONT:

WOULD ENTER THE ROOM AND STATE "DON'T MOVE OR I'LL KILL YOUR ASS". OBREGON SAID THAT THE ROOM HE WAS IN SMELLED REAL BAD, THERE WAS GARBAGE EVERYWHERE AND THE WINDOW WAS COVERED UP WITH A PIECE OF SHEET ROCK. OBREGON SAID THAT S-1 ASKED FOR HIS PIN NUMBER, SO THEY COULD TAKE MONEY FROM HIS ACCOUNT, HE WAS SCARED FOR HIS LIFE AND SAFETY AND GAVE IT TO THEM.

ON 17 DEC 02 AT ABOUT 1700HRS, OBREGON SAID THAT THEY TOOK HIM FROM THE APARTMENT AND DROPPED HIM OFF AT 107TH AV AND BANCROFT AV IN HIS VEHICLE, TOLD HIM TO STAY THERE FOR ABOUT FIVE MINUTES, AND LEFT HIM, INSIDE HIS VEHICLE AND FLED IN AN UNK DOF. OBREGON SAID THAT HE DID WHAT HE WAS TOLD TO DO, THEN DROVE HIS VEHICLE HOME.

WHEN OBREGON WENT HOME, HIS WIFE (MARIA) HAD CALLED THE BANK AND RECORDED SOME OF THE ACTIVITY DURING THE PAST DAY, SINCE OBREGON WAS REPORTED MISSING. OBREGON CAN IDENTIFY TWO OF THE SUSPECTS AND WANTS TO PRESS CHARGES AGAINST THEM. (SEE STATEMENT FOR DETAILS)

ON THE SCENE, I DID NOT OBSERVE ANY SIGNS OF PHYSICAL INJURIES ON OBREGON. OBREGON STATED THAT HE WAS NOT INJURED AND DID NOT NEED ANY MEDICAL ATTENTION.

I OBSERVED OBREGONS VEHICLE A 85, CHEV, BLAZER, 2D, WHI, LIC # ILM 174 CA PARKED FACING N/B, ALONG THE E/SIDE CURB, IFO OBREGON SAID THAT THE SUSPECTS HAD BEEN DRINKING AND SMOKING IN THE VEHICLE AND ALSO LEFT SOME RECEIPTS IN THE CAR.

| REPORTED BY | SERIAL # | WATCH | DISTRICT | SUPERVISOR | SERIAL # | |
|---|---|---|---|---|---|---|

***O P D***
**ADDITIONAL INFORMATION REPORT**

OAKLAND POLICE DEPARTMENT
455 - 7th Street
Oakland, CA 94607

RD #
02 - 117948

| CRIME | | INCIDENT # | | VICTIM LAST, First, Mid. |
|---|---|---|---|---|
| 209(B)(1) PC | [ ] SUPPLEMENTAL | 2056 | V1 | OBREGON, BRIGIDO |

| SUSPECT LAST, First Mid. | INCIDENT LOCATION | DATE OF THIS REPORT | ORIGINAL DATE REPORTED |
|---|---|---|---|
| UNK | 610 HAGENBERGER RD | 17 DEC 02 | |

**PROPERTY (and/or NARRATIVE)**

| ITEM # | QNTY. | ITEM TYPE, BRAND, MODEL #, SIZE, COLOR, MARKS, ETC | SERIAL # | VALUE |
|---|---|---|---|---|

SUMMARY CONT!

I CALLED FOR A TECHNICIAN TO FINGERPRINT THE VEHICLE. TECH R. BUCHER 4163P RESPONDED AND PROCESSED THE VEHICLE FOR FINGERPRINTS. ~~SHE ALSO RECOVERED THE RECEIPTS. TECH BUCHER SAID THAT SHE MAY HAVE RECOVERED A FINGERPRINT FROM THE VEHICLE.~~

I NOTIFIED YSD AND INFORMED THEM THAT (M/P) OBREGON HAD RETURNED HOME. I ALSO NOTIFIED 3L75 (SGT JOYNER) OF THIS INCIDENT.

TWO OF THE BANK CARD TRANSACTIONS TOOK PLACE AT A POPEYE'S CHICKEN AT 2143HRS, FOR $63.80, AND ONE FOR $72.59 AT 0122HRS. I RELOCATED TO POPEYE'S CHICKEN AT 7007 INT BLVD AND SPOKE WITH THE OWNER "M. AMIN" WHO LOOKED THROUGH HIS ATM RECEIPTS FROM 16DEC02 AND DID NOT FIND ANY RECEIPTS FOR THOSE AMOUNTS.

I GAVE OBREGON A RESOURCE CARD AND MADE A COMM ORDER

ADDITIONAL CHARGE
FALSE IMPRISONMENT | 236 PC

| REPORTED BY | SERIAL # | WATCH | DISTRICT | SUPERVISOR | SERIAL # | PAGE 7 OF 7 |
|---|---|---|---|---|---|---|
| M. MILLER | 84469 | 3 | 5 | SGT WILLIAMS | | |



# EXHIBIT

# B

**STATEMENT**
Oakland Police Department    536-200-1 (6/93)    Page _1_ of _2_

| 1. Complainant | Offense/Crime | 2. Report No. |
|---|---|---|
| ARTEMIO SANCEDO-RIVERA | 211 PC | 02-120056 |

| 3. Name of Person Giving Statement | Sex/Race/DOB | ☑ Complainant ☐ Suspect ☐ Driver |
|---|---|---|
| ARTEMIO SANCEDO-RIVERA M B 10 JUN 70 | | ☐ Reporting Person ☐ Witness |

4. Residence Address _____ City/Zip _____

5. ~~Employment/Address~~ _____ ☐ or Transient

| 6. Statement Taken By | Serial No. | Date | Time Started - Completed |
|---|---|---|---|
| E. TAPALA | 8580 P | 24 DEC 02 | 2330 - 0015 |

| 7. Location Where Statement Taken | Names, Addresses of Persons Present During Statement |
|---|---|
| RESIDENCE | |

### FOR VEHICLE COLLISIONS ONLY

| 8. License No. | State | Veh. Yr. | Make | Model | Type | Color(s) | Driver License No. | State |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

| 9. Registered Owner | Address | City/Zip | Residence/Business Phone ( ) |
|---|---|---|---|
| | | | |

**ADMONITION:** You have the right to remain silent. Anything you say can be used against you in a court of law. You have the right to talk to a lawyer and have him present with you while you are being questioned. If you cannot afford a lawyer, one will be appointed to represent you before any questioning if you wish one.    **Subject's Initials**

**WAIVER:** Do you understand each of these rights I have explained to you? _____

Having these rights in mind, do you wish to talk to us now? _____

Statement:

TODAY DEC 24, 2002 AT ABOUT 6:45 PM I WENT TO LOOK FOR AN APARTMENT IN THE ~~9500~~ 1400 AS BLOCK OF INTERNATIONAL. I SAW AN AD IN THE MERTERIA MARKET AT 9500 BLOCK OF INTERNATIONAL. I CALLED THE NUMBER AND I SPOKE TO ANGIE WHO TOLD ME TO GO TO THE ~~9500~~ 1400 BLOCK OF INTERNATIONAL. WHEN I GOT THERE, I WENT TO ~~AN~~ APARTMENT # THREE HOUSES FROM INTERNATIONAL, ON THE AS RIGHT SIDE AND TWO PEOPLE CAME UP TO ME - ONE ~~WAS~~ A BLACK GIRL ABOUT 25 YEARS OLD, ABOUT 6 FEET TALL, LARGE BUILD, SHORT BLACK HAIR, BROWN EYES, AND A BLACK MAN ABOUT 35 YEARS ABOUT 6 FEET TALL, HEAVY SET, BLACK LEATHER JACKET, AND BLACK JEANS WITH A NECKLACE. THE MAN PULLED AND POINTED A GUN AT ME; THE GUN LOOKED LIKE A MACHINE GUN. THE MAN TOLD ME TO GIVE HIM MY MONEY. BECAUSE I WAS AFRAID THAT THE MAN WILL SHOOT ME, I PULLED MY WALLET OUT AND I GAVE IT TO HIM. THE MAN TOOK MY ID CARD AND MY BANK OF AMERICA ATM CARD. THE MAN ASKED ME TO GIVE HIM MY PIN # WHILE HE POINTED THE GUN AT ME. I GAVE HIM MY PIN # AFTER HE

STATEMENT, CONTINUATION
Oakland Police Department    536-200-2 (6/93)     Page 2 of 2

| 1. Complainant | Offense/Crime | 2. Report No. |
|---|---|---|
| ARTEMIO SAUCEDO-RIVERA | 211 | 08-120056 |

| 3. Name of Person Giving Statement | Sex/Race/DOB | ☒ Complainant ☐ Suspect ☐ Driver |
|---|---|---|
| ARTEMIO SAUCEDO-RIVERA | M H 10 JAN 70 | ☐ Reporting Person ☐ Witness |

STATEMENT:

THEN THE MAN ASKED FOR THE KEYS TO MY CAR, I GAVE IT TO HIM.

BOTH THE MAN AND THE WOMAN TOLD ME TO GO INTO A ROOM IN THE APARTMENTS BUILDING AND THEY KEPT ME IN THAT ROOM. I STAYED THERE FOR ABOUT 20 MINUTES WHILE THEY SMOKED DRUGS. THEN THE MAN LEFT. WHEN THE WOMAN FELL ASLEEP, I RAN AWAY AND WENT OUTSIDE TO MY CAR. I DID NOT SEE MY CAR ANYMORE; I PARKED MY CAR ON 89TH AVE. I DID NOT GIVE ANY ONE PERMISSION TO DRIVE MY CAR.

I WALKED HOME AND CALLED THE POLICE.

I CALLED BANK OF AMERICA TO LET THEM KNOW THAT MY ATM CARD HAD JUST BEEN TAKEN BY A BLACK MAN. I FOUND OUT THAT ABOUT $275.00 HAD BEEN TAKEN OUT OF MY ACCOUNT WITHOUT MY PERMISSION.

I LOST $155.00 (1-$100 BILL, 2-$20.00 BILLS, 1-$10.00, AND 1-$5.00) WHEN I GAVE MY MONEY AND WALLET TO THE BLACK MAN.

I CAN IDENTIFY THE GIRL AND THE MAN WHO TOOK MY MONEY AND MY CAR. I WILL HELP IN THEIR PROSECUTION.

I AM NOT SURE THE APARTMENT'S EXACT ADDRESS BUT I CAN SHOW THE POLICE WHERE IT IS.

| Signature of Person Giving Statement | Date |
|---|---|
| | |

**OPD**

**ADDITIONAL INFORMATION REPORT**

OAKLAND POLICE DEPARTMENT
455 - 7th Street
Oakland, CA 94607

RD # 62-120052

| CRIME | | INCIDENT # | VICTIM LAST, First, Mid. |
|---|---|---|---|
| 211 (STRONG ARM) PC | [ ] SUPPLEMENTAL | 2342  V1 | SAUCEDO-RIVERA, ARTEMIO |

| SUSPECT LAST, First, Mid. | INCIDENT LOCATION | DATE OF THIS REPORT | ORIGINAL DATE REPORTED |
|---|---|---|---|
| UNK | 1300 BLK OF 89TH AV | 24 DEC 02 | 24 DEC 02 |

**PROPERTY (and/or NARRATIVE)**

| ITEM # | QNTY. | ITEM TYPE, BRAND, MODEL #, SIZE, COLOR, MARKS, ETC | SERIAL # | VALUE |
|---|---|---|---|---|

ADDITIONAL CRIMES:

2) VEHICLE THEFT, 10851 VC

3) FALSE IMPRISONMENT, 236 PC

4) FRAUDULENT USE OF ACCESS CARD, 484G PC

SUMMARY:

ON THIS DATE 24 DEC 02 AT ABOUT 2307H, OFCR WEHRLY AND I WERE DISPATCHED TO ▓▓▓▓▓▓ TO INVESTIGATE A REPORT OF ROBBERY AGAINST THE VICTIM - SAUCEDO, ARTEMIO. UPON OUR ARRIVAL, WE WERE MET BY SAUCEDO.

SAUCEDO TOLD US THAT HE FOUND AN AD IN MERTERIA MARKET RELATED TO AN APARTMENT FOR RENT. HE CALLED THE NUMBER AND WAS TOLD BY "ANGIE" TO GO TO WHAT SAUCEDO INITIALLY THOUGHT TO BE 1400 BLK OF INTERNATIONAL. WHEN HE ARRIVED AT THE LOCATION, A FEMALE BLACK AND MALE BLACK CAME UP TO HIM. THE BLACK MALE POINTED A WEAPON (WHICH APPEARED TO TO BE A MACHINE GUN) AT SAUCEDO; SAME MALE DEMANDED FOR SAUCEDO'S MONEY. BECAUSE OF FEAR FOR HIS LIFE, SAUCEDO GAVE HIS MONEY UP. SUSPECT-MALE BLACK ADDITIONALLY TOOK SAUCEDO'S CDL, ATM CARD, AND SAUCEDO'S CAR KEYS. I TOOK A STATEMENT FROM SAUCEDO.

BASED ON THIS PRELIMINARY INVESTIGATION, IT APPEARS THAT SAUCEDO WENT TO THE 1300 BLOCK OF 89TH AVE WITH INTENT TO RENT AN APARTMENT FROM ANGIE. UPON HIS ARRIVAL AT THE LOCATION, SUSPECT 1 DEMANDED MONEY FROM SAUCEDO WHILE POINTING A GUN AT SAUCEDO. SUSPECT 1 TOOK ALL OF SAUCEDO'S MONEY, CDL, ATM CARD, AND KEYS TO SAUCEDO'S 93 FORD T-BIRD. PER SAUCEDO'S STATEMENT, HE WAS HELD AGAINST HIS WILL IN APARTMENT 4 WHILE SUSPECT 1 AND SUSPECT 2 SMOKED DRUGS. SUSPECT 1 LEFT THE APARTMENT SUBSEQUENTLY. WHEN SUSPECT 2 FELL ASLEEP, SAUCEDO WAS ABLE TO ESCAPE FROM THE APARTMENT. SAUCEDO THEN IMMED...

**OAKLAND POLICE DEPARTMENT**
455 - 7th Street
Oakland, CA 94607

**ADDITIONAL INFORMATION REPORT**

RD # 02-120056

| CRIME | [ ] SUPPLEMENTAL | INCIDENT # | VICTIM LAST, First, Mid. |
|---|---|---|---|
| V/1 R | | 2342 V1 | SAUCEDO. RIVERA, ARTEMIO |

| SUSPECT LAST, First Mid. | INCIDENT LOCATION | DATE OF THIS REPORT | ORIGINAL DATE REPORTED |
|---|---|---|---|
| UNK | 1300 BLK OF 89TH AV | 24 DEC 02 | |

**PROPERTY (and/or NARRATIVE)**

ITEM # | QNTY. — ITEM TYPE, BRAND, MODEL #, SIZE, COLOR, MARKS, ETC — SERIAL # | VALUE

SUMMARY CONTINUED:

FOR HIS CAR, BUT WAS UNABLE TO FIND IT. SAUCEDO DID NOT GIVE PERMISSION TO ANYONE TO DRIVE HIS CAR. WHEN SAUCEDO CONTACTED BANK OF AMERICA, HE FOUND OUT THAT APPROXIMATELY $275.00 HAD BEEN WITHDRAWN FROM THE ACCOUNT. SAUCEDO DID NOT GIVE ANYONE PERMISSION TO USE HIS ATM CARD; SAUCEDO, HOWEVER, BASED ON HIS FEAR FOR HIS LIFE, HAD TO GIVE UP HIS PIN # TO SUSPECT 1 WHEN SUSPECT 1 DEMANDED FOR THE PIN # WHILE SUSPECT 1 POINTED THE GUN AT SAUCEDO.

SUSPECT 1 FLED WITH SAUCEDO'S MONEY (EVID 3), CDL (EVID 1), ATM CARD (EVID 2), KEYS TO 93 FORD AND THE VEHICLE AS LISTED ABOVE, IN AN UNKNOWN DIRECTION. IT ALSO APPEARS THAT SUSPECT 1 HAD ACCESSED SAUCEDO'S BOFA ACCOUNT FRAUDULENTLY.

AFTER TALKING TO SAUCEDO, HE WILLINGLY CAME WITH OFCR HENRY AND ME IN THE PATROL CAR AND DIRECTED US TO THE EXACT LOCATION WHERE SAUCEDO WAS ALLEGEDLY ROBBED OF HIS MONEY, CDL, ATM CARD, CAR KEYS AND CAR. HE POINTED US TO 1347 - 89TH AVE, APT 4. THIS LOCATION IS NOT KNOWN TO HAVE ANY VACANCIES; HOWEVER, THE LOCATION IS KNOWN TO BE A SPOT WHERE PROSTITUTION AND DRUG-USE ARE COMMON.

I DID A COMM-ORDER RELATED TO BOTH THE VEHICLE THEFT AND ROBBERY - STRONG ARM.

SAUCEDO DID NOT APPEAR TO BE UNDER THE INFLUENCE OF ANY NARCOTICS; SAUCEDO FURTHER DENIED ANY INTENTION TO DO ANY OTHER ACT OTHER THAN LOOK FOR AN APARTMENT IN THE 1300 BLOCK OF 89TH AVE.

| REPORTED BY | SERIAL # | WATCH | DISTRICT | SUPERVISOR | SERIAL # | PAGE | OF |
|---|---|---|---|---|---|---|---|
| E JACALA | 8.80A | 1 | 6 | SGT DELGADILLO | TIEMPA | 4 | 5 |





**STATEMENT**
**Oakland Police Department**    536-200-1 (6/93)    Page 1 of 3    2. Report No. 02-417274

| 1. Complainant | Offense/Crime |
| --- | --- |
| BUENROSTRO, SANTIAGO | 215PC |

| 3. Name of Person Giving Statement | Sex/Race/DOB (30) | ■ Complainant | □ Suspect | □ Driver |
| --- | --- | --- | --- | --- |
| BUENROSTRO, SANTIAGO | M B 25JUN72 | □ Reporting Person | □ Witness | |

| 4. Residence Address | City/Zip | Phone |
| --- | --- | --- |
| | | |

5. Employment (Name, Address, Phone, Occupation, Work Hours, Days Off) or Supplemental Information if Unemployed or Transient

| 6. Statement Taken By | Serial No. | Date | Time Started - Completed |
| --- | --- | --- | --- |
| D. CLARK | 8498P | 16 DEC 02 | 0009 - |

| 7. Location Where Statement Taken | Names, Addresses of Persons Present During Statement |
| --- | --- |
| ACH | |

## FOR VEHICLE COLLISIONS ONLY

| 8. License No. | State | Veh. Yr. | Make | Model | Type | Color(s) | Driver License No. | State |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | | | | | |

| 9. Registered Owner | Address | City/Zip | Residence/Business Phone ( ) |
| --- | --- | --- | --- |
| | | | |

ADMONITION: You have the right to remain silent. Anything you say can be used against you in a court of law. You have the right to talk to a lawyer and have him present with you while you are being questioned. If you cannot afford a lawyer, one will be appointed to represent you before any questioning if you wish one.    Subject's Initials

WAIVER: Do you understand each of these rights I have explained to you? _____

Having these rights in mind, do you wish to talk to us now? _____

Statement:

MY NAME IS SANTIAGO BUENROSTRO AND
TODAY IS DEC 16 2002 AT 12:00. TONIGHT
AT AROUND 9:00 I WAS DRIVING HOME
ON E. 19™ ST TOWARDS SANLEANDRO (E/B). I
STOPPED AT A CROSSWALK AT 85™ AVE
TO LET A MALE BLACK WALK ACROSS THE
STREET. ALL OF ASUDDEN A BLACK GUY
JUMPED INTO THE BACK SEAT FROM THE DRIVERS
SIDE. HE GRABBED ME BY THE NECK AND
PULLED ME BACK INTO MY SEAT. THEN
ANOTHER BLACK GUY JUMPED INTO THE OTHER
SIDE BACK SEAT AND POINTED A BIG BLACK
DEVOLVER AT ME. THEN A FEMALE BLACK
GOT INTO THE FRONT SEAT PASSENGER SIDE
AND SAID TO DRIVE AWAY FAST. THEY
TOLD ME TO TURN RIGHT SOMEWHERE I
DONT REMEMBER WHICH STREET. ALL OF THEM
WERE HITTING ME WITH

Signature of Person Giving Statement: X Santiago Buenostro  Date: 16 DEC 02

1682
16 Jr

**STATEMENT CONTINUATION**
Oakland Police Department    536-200-2 (6/93)    Page 2 of 3    2. Report No.
02-117274

1. Complainant    Offense/Crime
BUENROSTRO, SANTIAGO    Z 15 PC

3. Name of Person Giving Statement    Sex/Race/DOB (30) ☒ Complainant    ☐ Suspect    ☐ Driver
BUENROSTRO, SANTIAGO    M H 2 JUN72 ☐ Reporting Person    ☐ Witness

STATEMENT:

THEIR HANDS AND THE GUN. WE STOPPED SOME WHERE AND THEY PULLED ME INTO THE BACK SEAT. THE GUY RIGHT BEHIND ME GOT INTO THE DRIVERS SEAT AND DROVE AWAY. WHILE IN THE BACK SEAT THEY KEPT KICKING AND PUNCHING ME. THE GUY THEN TOOK OUT MY WALLET. WE ALL DROVE AROUND FOR AWHILE. WE WOULD STOP FOR A MINUTE AND THE GUY AND THE GIRL IN THE FRONT WOULD GET OUT, THE GUY IN BACK WOULD STAY IN THE BACK WITH ME. THIS HAPPENED ABOUT THREE TIMES I DON'T KNOW WHERE WE WERE. THEN WE DROVE TO WHAT I THINK WAS WELLSFARGO AT BANCROFT AND 73ʳᵈ AVE. THEY ASKED ME MY PIN # AND THE GIRL GOT OUT AND TRIED TO TAKE OUT MONEY OF THE ATM. SHE CAME BACK AND SAID THE PIN # WASN'T WORKING. ALL OF THEM STARTED TO BEAT HIM AGAIN ASKING FOR THE PIN #. I TOLD THEM THE # AGAIN. THE GIRL WENT BALK TO THE ATM. SOON AFTER SHE GOT IN THE CAR AND WE DROVE OFF. THEY KEPT DRIVING AROUND BEATING ME THE WHOLE TIME UNTIL THEY STOPPED. THEY PULLED ME OUT BY MY FEET INTO A FRONT YARD. THEY WERE ALL

Signature of Person Giving Statement    Date
X Santiago-Buenrostro  16 Dec 02

STATEMENT CONTINUATION
Oakland Police Department    536-200-2 (6/93)

| | | |
|---|---|---|
| Page 3 of 5 | | 2. Report No. 02417274 |

1. Complainant: SANTIAGO

Offense/Crime: 2150C

3. Name of Person Giving Statement: SANTIAGO

Sex/Race/DOB (30) ☒ Complainant  ☐ Suspect  ☐ Driver
M H 2JUN72 ☐ Reporting Person  ☐ Witness

STATEMENT:

BEATING ME IN THE YARD. ONE GUY STARTED TO CHOKE ME AND SMASH MY FACE IN THE MUD. ONE OF THE GUYS SILL HAD THE GUN POINTED AT ME. THE ALL GUT INTO THE MY CAR AND DROVE OFF. I DON'T KNOW WHERE I WAS AT WHEN THEY LEFT. I WALKED UP TO A HOUSE NEAR BY AND ASKED FOR HELP. THE POLICE AND AN AMBULANCE ARRIVED SOON AFTER. I WAS SCARED THE WHOLE TIME THEY WERE GOING TO KILL ME. THE FIRST GUY WAS A BLACK MAN WEARING DARK CLOTHES AND ABOUT 20 OR SO. THE SECOND GUY WAS ALSO BLACK WAS WEARING BLACK CLOTHES WITH A HOODED JAKET AND ARMED WITH A BLACK REVOLVER HE TOO WAS ABOUT 20. THE GIRL WAS BLACK WEARING DARK HOODED JACKET AND DARK PANTS AND WAS AROUND 20. I WANT THE PEOPLE WHO DID THIS TO GO TO JAIL. MY CAR IS A 89 TOYOTA CORROLLA BLUE WITH 4 DOORS. THEY ALSO TOOK MY GOLD WATCH, GOLD NECKLACE WITH A CROSS AND MY CREAM COWBOY BOOTS. OH, AND MY GOLD RINK WITH 3 DIAMONDS. THEY ALSO TOOK MY BROWN LEATHER WALLET WITH MY CREDIT CARDS AND CDL WITH MY NAME ON THEM. THIS IS A TRUE STATEMENT.

Signature of Person Giving Statement: San Tiago Puenyostivo    Date: 16 DEC 02

**ADDITIONAL INFORMATION REPORT**

OAKLAND POLICE DEPARTMENT
455 - 7th Street
Oakland, CA 94607

RD # 02-117274

| CRIME | [ ] SUPPLEMENTAL | INCIDENT # | V1 | VICTIM LAST, First, Mid. |
|---|---|---|---|---|
| CAR JACKING | 215 PC | 2810 | | BUENROSTRO SANTIAGO |

SUSPECT LAST, First Mid.    UNK

INCIDENT LOCATION    85th AVD    E. 14th ST

DATE OF THIS REPORT    15 DEC 02

ORIGINAL DATE REPORTED

PROPERTY (and/or NARRATIVE)

| ITEM # | QNTY. | ITEM TYPE, BRAND, MODEL #, SIZE, COLOR, MARKS, ETC | SERIAL # | VALUE |
|---|---|---|---|---|

ADDITIONAL LOSS:

1) ONE PAIR OF CREAM COLORED COWBOY BOOTS (LEATHER)
UNK BRAND, UNK VALUE

2) ONE GOLD WATCH
UNK SERIAL #, UNK MODEL #,
VALUE: UNK

3) ONE GOLD NECKLACE W/ GOLD CROSS
UNK SERIAL, MODEL #
VALUE: UNK

4) ONE GOLD RING W/ THREE DIAMONDS
UNK SERIAL #, UNK MODEL #
VALUE: UNK

5) ONE BROWN LEATHER WALLET CONTAINING MISC
CREDIT CARDS, CALIFORNIA DRIVERS LICENSE IN
THE NAME OF (V #1) BUENROSTRO, SANTIAGO.

Summary:

ON 16 DEC 02 AT APPROX 0009 HRS, I WAS WORKING AS
OPD PATROL UNIT 1A32 W/ OFFICER D. CLARK 6498P.
RADIO DISPATCHED US TO ACH HOSPITAL TO MEET
W/ V#1 BUENROSTRO WHO CLAIMED THAT HE HAD
BEEN CAR JACKED AND KIDNAPED.

| REPORTED BY | SERIAL # | WATCH | DISTRICT | SUPERVISOR | SERIAL # | |
|---|---|---|---|---|---|---|
| D. KEMMITT | 8425P | 1 | 1 | SGT. BERNARD | | PAGE 5 OF 8 |

i36-937 (1/97)

**OAKLAND POLICE DEPARTMENT**
455 - 7th Street
Oakland, CA 94607

**OPD ADDITIONAL INFORMATION REPORT**

RD # 0241727?

| CRIME | [ ] SUPPLEMENTAL | INCIDENT # | | VICTIM LAST, First, Mid. |
|---|---|---|---|---|
| CAR JACKing 215(A) PC | | 2810 | V1 | BUENROSTRO SANTIAGO |

| SUSPECT LAST, First Mid. | INCIDENT LOCATION | DATE OF THIS REPORT | ORIGINAL DATE REPORTED |
|---|---|---|---|
| UNK | 85th AND E. 14th | 16 DEC 02 | |

**PROPERTY (and/or NARRATIVE)**

ITEM #.  QNTY.    ITEM TYPE, BRAND, MODEL #, SIZE, COLOR, MARKS, ETC    SERIAL #    VALUE

Summary Cont:

UPON Arrival, WE CONTACTED V#1 BUENROSTRO WHO WAS
BEing TREATED FOR A SWOLLEN RIGHT CHEEK AND
A KNOT ON THE BACK OF HIS HEAD. (U#1) SPOKE
MINIMAl English. A AMR Employee (BARBOZA, SEBASTIAN
6.25.79 ( ▓▓▓▓▓▓▓▓▓ ) ASSISTED ME AS
AN INTERPRETER.


(V#1) STATED THAT ON 15 DEC 02 AT APPROX 2100 HRS
HE WAS STOPPED AT THE INTERSECTION OF
85th Ave AND INTERNATIONAl BlVD. (V#1) WAS
DRIVing HiS VEHICLE (89 TOYT COR 4D BlU). WHilE
STOPPED, S#1 APPEARED FROM A UNK LOCATION AND
OPENED THE REAR DRIVERS SIDE DOOR AND SAT iN
THE BACK SEAT. S#1 (mB, 20'S WEARing A BlK HOODED
JACKET AND BlACK PANTS) GRABBED V#1'S NECK
AND WAS PUlling HiM BACK iN HiS SEAT CHOAKing Him.
AT THiS PoiNT, S#2 (mB, 20'S WEARing A BlK HOODED
JACKET AND BlARK PANTS) OPENED THE REAR PASSENGER
DOOR AND POiNTED A BlACK REVOlVER (APPROX 6" BARREl) AT V#1'S
HEAD.  S#3 (FB 20'S WEARing A BlACK HOODED JACKET
AND BlACK PANTS) OPENED THE FRONT PASSENGER DOOR
AND TOlD V#1 TO DRIVE AWAY FAST. V#1 DROVE
HIS VEHICLE WHilE S#1 3 WERE HiTTing HiM W/
THEIR FISTS WHilE S#2 WAS STRiKing V#1 iN
THE HEAD W/ THE REVOlVER.

| REPORTED BY | SERIAL # | WATCH | DISTRICT | SUPERVISOR | SERIAL # | PAGE |
|---|---|---|---|---|---|---|
| D. Kemmitt | 8425P | 1 | 1 | SgT. BERNARD | | 6 OF 8 |

536-937 (1/97)

ORI 00109

OAKLAND POLICE DEPARTMENT
455 - 7th Street
Oakland, CA 94607

**ADDITIONAL INFORMATION REPORT**

RD # 62-117274

| CRIME 215(c) PC | [ ] SUPPLEMENTAL | INCIDENT # 2510 | V1 | VICTIM LAST, First, Mid. BUENROSTRO, SANTIAGO |
|---|---|---|---|---|

| SUSPECT LAST, First Mid. UNK | INCIDENT LOCATION 65th AND E. 14th ST (60DECOZ) | DATE OF THIS REPORT | ORIGINAL DATE REPORTED |
|---|---|---|---|

**PROPERTY (and/or NARRATIVE)**

| ITEM # | QNTY. | ITEM TYPE, BRAND, MODEL #, SIZE, COLOR, MARKS, ETC | SERIAL # | VALUE |
|---|---|---|---|---|

Summary Con't:

V#1 SAID THAT HE STOPPED THE VEHICLE AT A UNK LOCATION S#1-3 PULLED V#1 IN THE BACK SEAT OF THE VEHICLE. S#1 GOT INTO THE DRIVERS SEAT, AND DROVE THE VEHICLE WHILE S#2, 3 CONTINUED TO PUNCH AND KICK V#1. AT THIS POINT S#1, 2 WERE RIFLING THROUGH HIS POCKETS AND TOOK OUT HIS WALLET.

V#1 SAID THEY DROVE TO A WELLS FARGO BANK AND THOUGHT THEY WERE AT 73rd AVE AND BANCROFT, BUT WAS NOT SURE OF THE EXACT LOCATION. ALL THREE SUSPCS) ASKED HIM FOR HIS PIN# AND THE FEMALE SUSP #2 GOT OUT OF THE VEHICLE AND ATTEMPTED TO TAKE MONEY OUT OF THE ATM W/ V#1'S CARD. S#2 RETURNED TO THE VEHICLE AND SAID THAT THE PIN# WAS NOT RIGHT. ALL THREE SUSP(S) CONTINUED TO PHYSICALLY ASSAULT V#1. V#1 TOLD SUSP(S) THE PIN# AGAIN AND S#2 GOT OUT OF THE VEHICLE AND ATTEMPTED TO USE V#1'S CARD AT THE ATM. S#2 RETURNED TO THE VEHICLE AND THEY DROVE OFF. V#1 IS NOT SURE IF THE SUSPECTS WERE ABLE TO TAKE OUT MONEY.

THE SUSPECTS DROVE THE VEHICLE AND PARKED IN FRONT OF 1682 16th ST. ONE SUSPECT PULLED V#1 OUT OF THE VEHICLE AND GRABBED V#1 BY THE BACK

| REPORTED BY D. Kennitt | SERIAL # 8425P | WATCH 1 | DISTRICT | SUPERVISOR Sgt BERNARD | SERIAL # | PAGE 7 OF 8 |
|---|---|---|---|---|---|---|

536-937 (1/97)

# OPD

**OAKLAND POLICE DEPARTMENT**
455 - 7th Street
Oakland, CA 94607

**ADDITIONAL INFORMATION REPORT**

RD # 02-117274

| CRIME | [ ] SUPPLEMENTAL | INCIDENT # | V1 | VICTIM LAST, First, Mid. |
|---|---|---|---|---|
| 215 (a) PC | | 2810 | | BUENROSTRO, SANTIAGO |

| SUSPECT LAST, First Mid. | INCIDENT LOCATION | DATE OF THIS REPORT | ORIGINAL DATE REPORTED |
|---|---|---|---|
| UNK | 85th AND E. 14th ST | 16 DEC 02 | |

**PROPERTY (and/or NARRATIVE)**

| ITEM # | QNTY. | ITEM TYPE, BRAND, MODEL #, SIZE, COLOR, MARKS, ETC | SERIAL # | VALUE |
|---|---|---|---|---|

SUMMARY CONT:

OF HIS HEAD AND HELD IT IN THE MUD, AND ONE OF THE SUSPECTS POINTED THE REVOLVER AT HIS HEAD. ONE OF THE SUSPECTS TOOK HIS NECKLACE (LOSS #3), HIS COWBOY BOOTS (LOSS #1), HIS GOLD WATCH (LOSS #2), HIS GOLD RING (LOSS #4) FROM HIM.

ALL THREE SUSPECTS GOT BACK INTO THE VEHICLE AND DROVE OFF HEADING IN A UNK LOCATION.

V#1 PICKED HIMSELF OFF THE GROUND AND KNOCKED ON THE DOOR AT ████████ AND ASKED THE OCCUPANTS INSIDE TO CALL 911.

AMR # 510 RESPONDED AND TOOK V#1 TO ACH.

OFFICER D. CLARK TOOK A STATEMENT FROM V#1 WHO CAN IDENTIFY ALL THREE SUSPECTS.

V#1 DID NOT WANT TO WAIT FOR A TECHNICIAN FOR PHOTOS.

OFFICER D. CLARK AND I CANVASSED THE AREA FOR THE WELLS FARGO V#1 THOUGHT THEY WERE AT. WE WERE UNABLE TO CONFIRM WHICH WELLS FARGO THE SUSP(S) DROVE TO.

I ENTERED THE VEHICLE INTO SVS, AND CALLED IN A COMM ORDER.

| REPORTED BY | SERIAL # | WATCH | DISTRICT | SUPERVISOR | SERIAL # | |
|---|---|---|---|---|---|---|
| D. Kennitt | 8425P | 1 | 1 | SGT. BERNARD | | PAGE 8 OF 8 |

536-937 (1/97)

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

*FILED*
08 JUL 23 PM 4: 11

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Antonio S. Scott

**PLAINTIFF or PETITIONER**

v.

Tom Felker

Case Number: C07-4279 CRB (PR)

**Defendant or Respondent**

## PROOF OF SERVICE

I hereby certify that on   7-21   , 2008, I served a copy

of the attached Response To The Answer to order To Show Cause by placing a copy in

a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope

in the United States Mail at   Susanvill, CA   :

Office of The Clerk, U.S District court
Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

AND:

Office of The Attorney General
455 Golden Gate Ave, Suite 11000
San Francisco, CA 94102-7004

I declare under penalty of perjury that the foregoing is true and correct.

Antonio Scott

Antonio Scott # V42330
High Desert State Prison C-118 ①
P.O. Box 3030
Susanville, CA 96127

STATE PRISON

Confidental
Legal
Mail

Office of The Clerk, U.S District
Northern District of California
450 Golden Gate Avenue
San Francisco, CA
94102



7/20 — D. COOPER