FILED

08 AUG -6 PM 12:36

IN The United States District
Court For The NorthernN District
OF California

Antonio Scott

          Petitioner

V.

Tom Felker

          Respondant

C07-4279 CRB (PR)

Supplemental
BRief

# Table of Contents

1

2

3

4  ARGUMENT:

5

6  (Pg.1) The State Court of Appeals Determination Was
7       Not a Reasonable Application Controlling
       United States Supreme Court Authority,
8       And the error was not a harmless error.

9

10 (Pg.3) A. There is Instructional Issue And Error

11

12 (Pg.5) B. Prejudice Did Occur

13 (Pg.10) C. In Proper Jury Instructions

14 (Pg-12) 1. Additional Argument

15

16      Table of Authorities, Statutes, And
17      Other Authorities All Mention Herein....

18

19

20

21 Conclusion.................... Pg 12

22

23

24

25

26

27

28

D/140u

ARGUMENT:

1. The state court of Appeals Determination was Not a Reasonable Application Controlling United States Supreme Court Authority, And the error was not a harmless error.

Attorney General contents through evidentiary and instructional error with respect to the uncharged crimes that Petitioner wasn't denied his right to a fair trial.

One Single Fact Remain: How might the Jury reasonably determine Petitioner committed the Buenrostro crimes, and so infer Petitioner "Guilt" of the others? Under CALJIC NOS. 2.50.1 and 2.50.2, a Preponderance of evidence was Sufficient. Moreover, the same "Characteristic Method" finding under CALJIC NO. 2.50 Proved a "Clear Connection" between the crimes. It would be a simple matter to rely on that connection and Scott's identification as Perpetrator of the Charged crimes - even if subject to reasonable doubt - in finding his involvement in the uncharged incident. Any Such court, could see in such a reasoning process would be Perfectly logical under the instructions, while erroneous under Ewoldt.

The Jury instructions facilitated Prejudicial, improper use of irrelevant evidence to reach a guilty verdict in the charged crimes against Petitioner was not a harmless error. The Jury instructions where misleading and more than "likely to cause an imprecise, arbitrary, or insupportable finding of guilt. due Process is denied (Baldwin v. Blackburn (5th cir. 1981) 653 F.2d 942-949.)

1  A combination of common Plan theory's, evidentiary

2  and instructional errors can not be harmless error's.

3  State and Federal constitutions guarantee's Petitioner

4  a Fair Trial and due Process of Law. Cal. Const., art.

5  I, § 15; U.S. Const., Amend. 14.) In theory, so do the evid-

6  entiary Principles at issue here. Evidence code Section 1101

7  codifies the common law assurance that a defendant

8  Must not be Judged guilty because his Past reveals

9  his "criminal disposition." People v. Ewoldt, supra, 7 cal.

10  4th 380, 392; People v. Garceau (1993) 6 cal. 4th 140, 186 [use of

11  such evidence May dilute Presumption of innocence.]

12  As a general Principle, "the due Process clause does

13  not Permit courts to engage in fine-tuning of State

14  evidentiary rules. [Citations]" People v. Fitch (1997)

15  55 cal. App. 4th 172, 179.) But where the State's evidenti-

16  ary safeguard fail to function ProPerlT, and the re-

17  sult is a fundamentally unfair trial, due Process is

18  Violated. McKinney v. Rees (9th Cir 1993) 993 F.2d 1378,

19  1380-1385).

20  . The State court of Appeal as well as the Answer to

21  order to show cause admittes that the trial court

22  erred in admitting evidence of uncharged misconduct,

23  in which brought about both the erroneous evidentiary

24  ruling and the unconstitutional instruction, encouraging

25  the Jury to Find . Petitioner guilty in material Part

26  because of his Purported involvement in the uncharged

27  crimes. McKinneyv.Rees, supra, 993 F.2d 1378-1385.

28  IN Sum, Petitioner was tried first and foremost as

1  a Planner and Schemer of Robberies, Carjackings,
2  False imprisonments by Vidence IN use with Deadly or
3  Dangerous Weapon, based in material Part on the most
4  Violate of the three incidents, despite not even a drop
5  of evidence connecting Petitioner to it. Such a trial
6  with this type of "Common Plan theory which are subject
7  to misunderstanding and misapplication at trial, des-
8  pite Ewoldt's repeated admonition that common Plan
9  evidence is not used to Prove the defendant identity"
10 (id. At 394, 399, 406) Such a trial "Violates the fundamen-
11 tal Principles of due Process of the Laws." People v. Jackson,
12 Supra, 254 Cal. App. 2d 655 660.)
13
14
15  A. There is instructional issue and ERROR
16
17  As a "foundational requirement" for use of uncharged
18  crime evidence in support of a Proper theory, there must
19  be Sufficient evidence that the defendant committed
20  the uncharged crimes. People v. Carpenter (1997) 15 Cal. 4th
21  312, 382; Evid. Code 8403; CALCRIM NO. 375 – Related Issues
22  offenses not connected to defendant. "Evidence of other
23  offenses committed in the same manner as the alleged
24  offense is not admissible unless there is sufficient
25  evidence that the defendant committed the uncharged
26  offenses [Citations.]" See also Imwinkelried, Uncharged
27  Misconduct Evidence, ¶ 2:16, P.2-55: "In some cases,
28  the witness clearly observed the uncharged act but

1  cannot Identify the defendant as the Perpetrator of
2  the uncharged act. The California courts have been
3  especially careful in Scrutinizing the Proof of the
4  defendant's identity.") "It must be shown with reas-
5  onable certainty that the accused committed the other
6  crime.'(People v. Albertson (1944) 23 Cal. 2d 550, 578,
7  580 [Plurality Opn])

8   The Opn. 10 cited And "A.G" cited in His Answer to
9  order to show cause: People v. Watson 1956 46 cal. 2d
10 818, 836.) They both said Petitioner error's were harmless
11 under the Standard of Watson and no due Process Viol-
12 ation. The analysis is limited only to evidence more
13 specifically, evidence in Support of the Verdicts. This limi-
14 tation is untrue to the entire cause "test and therefore
15 improper. Watson itself made this clear. The entire phrase
16 refers to "an examination of the entire case, including
17 the evidence ...." The evidence refers to all the evid-
18 ence relevant to the determination, not Simply evid-
19 ence Supporting the Verdict. On the contrary, Reversal
20 Is necessary where the evidence Supports conflicting
21 conclusions" with respect to the matter at issue.
22 People v. Giardino (2000) 82 cal. App. 4th 454, 467.)

23  Petitioner still relay upon his briefs which he filed
24 in the State court, California Supreme court and this
25 court. I Still claim CALJIC No. 2.50 is Flawed; The evid-
26 entiary and instructional error's allowed the Jury to
27 rely on such a flawed Plan to Find that Petitioner com-
28 mitted the crimes charged in this case (10 RT 615, 2CT

285. CALJIC No. 2.50) In Short, The Jury Presumably
understood they could find guilt through at least two
analytical steps expressly outlawed in California:
1) Relying on Flawed evidence that appellant committed
the uncharged crimes, and 2) relying on evidence of a
common plan to find appellant was a Perpetrator of
the charged crimes.


B. PREJUDICE DID OCCUR

   On federal habeas review, the question is whether
the admission of the challenged evidence was so Pre-
judicial in the context of the trial as to render the
conviction unfair. Estelle V. McGuire, 502 U.S. 62. 67 1991.
   On Page 9, of the "A.G" Answer To Order To show cause,
He cited Estelle and Quoted "The State Court of Appeal
cites Estelle as the Controlling authority, and Petitioner
makes no argument that the State Court of appeal
unreasonably applied Estelle. First, I disagree with the
Prosecutor, First Appellate Court, California Supreme Court.
Petitioner also spoke of Estelle V. McGuire in His Petition
For Writ of Habeas Corpus Pg 67.
   Petitioner still disagree as to Estelle being the
controlling authority. based on a number of settled
Principles. The Constitution Guarantees " a charge
fairly made and fairly tried in a Public tribunal free
of Prejudice, Passion, excitement and tyrannical Power "

(Chambers v. State of Florida (1940) 309 U.S. 227,
236-237.) "An important element of a fair trial is
that a jury consider only relevant and competent
evidence bearing on the issue of guilt or inno-
cence. [Citation.]" (Bruton v. United States (1968) 391 U.S.
123, 131, Fn. 6.) The United States Supreme Court has
not addressed the issue of whether admission of
irrelevant evidence, by itself, may deny Due Process.
Estelle v. McGuire, supra, 502 U.S. 62, 70.) But the Ninth
Circuit, following Estelle v. McGuire, has held that
where 1) contested "Other acts evidence" was not
"relevant to an essential element in the Prosecutions
cases" and 2) its erroneous admission "renders
the [defendant's] trial fundamentally unfair," Due
Process require reversal of a State Conviction.
(McKinney v. Rees, supra, 993 I.2d 1378, 1380. Dudley
v. Duckworth (7th Cir. 1988) 854 F.2d 967, 970 [Due Process
Violated if Prejudicial effect of evidence so far
outweighs Probative Value that defendant is
denied fair trial.]

Petitioner other Primary Concerns is the Prosec-
utor's reliance on the charged crime evidence to iden-
tify defendant as Perpetrator of the uncharged crime,
this created an improper route to the Guilty Verdicts.
The uncharged evidence, No matter weak or not, Effected the
decision of the Jury because the issue here is to what
extent a rule against "Circular reasoning" Prevents the
Prosecutor's use of charged crime evidence to show defen-

1   dant committed the uncharged crime, in order to get
2   that crime before the Jury as evidence of defendant's
3   identity in the charged crime. In a 1944 plurality
4   opinion of the court held an approach improper:
5   Although this opinion was signed by a three-justice
6   "plurality Carter, Shenk, and Schauer) Justice Traynor ref-
7   erred to it as "the majority opinion" in agreeing that
8   evidence of the uncharged crime should not have been
9   admitted, as defendant's responsibility could not be esta-
10  blished.(Id at 581.) Since then, several courts of Appeal
11  have recognized the <u>Albertson</u> rule against "Circular
12  reasoning." <u>People</u> v. <u>Erving</u> (1998) 63 Cal. App. 4th 652, 663–664;
13  <u>People</u> v. <u>Martinez</u> (1992) 10 Cal. App. 4th 1001, 1006–1007;
14  <u>People</u> v. <u>Long</u> (1970) 7 Cal. App. 3d 586, 590; <u>People</u> v. <u>Jack-</u>
15  <u>son</u> (1967) 254 Cal. App. 2d 655.658.660.) The Attorney
16  General implicitly refuse to recognize this, as well as
17  the opinion fail to acknowledge Justice Traynor's conc-
18  urrence as well.
19      Among other problems in Petitioner case. Three princi-
20  ples clearly established by the Supreme Court:
21  'l) Where the perpetrator's identity was disputed in
22  both charged and uncharged incidents, such a use of
23  other crimes evidence erroneously relies on circular
24  reasoning. <u>People</u> v. <u>Albertson</u> (1944) 23 Cal. 2d 550, 580–581,
25  <u>People</u> v. <u>Erving</u> (1998) 63 Cal. App. 4th 652–663, 664, cf. <u>People</u>
26  v. <u>Carpenter</u>, Supra 15 Cal. 4th 312, 378–380. [Defendant's
27  identity as perpetrator of uncharged crimes shown in
28  part through evidence of charged crimes, but former al-

missible to prove his intent, not identity, (e letter]

1   moreover, the following facts are not included in the
2   opinion's factual summary (opn. 3-6, nor in its discuss-
3   ion of the uncharged misconduct issue (opn 7-11):
4
5   2) speaking to police for an hour, Obregon said he thou-
6   ght he could identify at least two of the three robbers
7   not including the armed robber he later identified as app-
8   ellant-if he were to see them again. 7 RT 198, 231-232,
9   247-248, 256, 262, 265, 279, 275, 277, 281.) As for that sus-
10  pect, Obregon described natural hair with twists; he said
11  nothing about a wig, nor that he had ever seen the man's
12  uncovered face. (7 RT 259, 261, 269-270, 279-280, 282.)
13  3) when Obregon identified Petitioner at trial, he was
14  the only African-American man in the court room, let
15  alone at the counsel table. (6 RT 182.)
16  4) Obregon testified he did not remember speak with
17      another Latino man in a court room elevator at
18  the hearing (Preliminary Hearing)(7 RT 215-217.) But the other
19  charged victim Saucedo recalled that after the hearing
20  spoke to Obregon they spoke briefly. the other man (Obregon)
21  said he'd been robbed by "the same people" and held for
22  around 20 hours. 8 RT 352-354, 380-381, 384; 9 RT 518-519.)
23
24  And last, the jury heard evidence of a weapon being
25  used as a deadly weapon, but the prosecutor didn't
26  charge Petitioner assaulting either victim with a
27  deadly weapon because it would have been impossible to
28  prove intent or great bodily injury; because it wasn't

1   anything in the record supporting that the weapon was
2   ever used in that manner. Moreover, the uncharged
3   crimes of evidence could not be used.
4      The appellate court agreed with Petitioner that
5   the deadly weapon use Allegation was unsubstantiated,
6   so therefore, was stricken from the record.
7      It now, becomes a Question of Law or Mix Question
8   of Law. Now the other Question of law "The use of force
9   and fear in the Process of a kidnapping, carjacking,
10  Robbery and two counts of a lesser Includes offense of
11  the False imprisonment People v. Chacon 1995 37 Cal. App.
12  4th 52,65, 43 Cal.. RPtR .2d 434.) Petitioner can-not
13  be convicted of both kidnapping and a lesser included
14  offense. This also goes back to the above counts to the
15  intent to cause "Great Bodily injury. Robbery involves taking
16  Property from another by means of force or fear. West's
17  Ann. Cal. Penal code §211, fear may be inferred from the
18  circumstance's in which a crime is committed or
19  Property is taken. People v. Holt, Supra, 15 cal. 4th at
20  P. 690, 63 Cal. RPtR. 2d 782, 937 P.2d 313).
21     It is Clear, the Elements need to Prove the Gun
22  used was not Deadly.    Therefore, the states case Failed
23  citing Lochtefeld. The trial court used count 1 and 8
24  to Secure Petitioner Conviction as elements of the
25  alleged crime. The Court of Appeals Reversed Petitioner
26  count 1 and 8 on the grounds of insufficiency evidence.
27     There was evidentiary basis and it was applied
28  here, The Jury heard this basis rationale, The Jury

deliberated on this and found Petitioner guilty
on all counts. The Jury instructions was wrong and
and incomplete. Therefore, Petitioner were denied
his (6) Amendment right to a fair and impartial Jury/
Right to Trial because had they been Properly not-
ified or informed about the Gun Allegations, or
issued the correct Jury instructions, Petitioner would
have never been Found guilty of certain counts in his
case. The (6) Amendment, In all criminal Prosecutions
The accused shall enjoy the right to trial by an
impartial Jury. This equally applies to the instructions.
Addressing the Accusations / Charges. IN Re: Winship,
Requires a conviction to be reversed unless, The charge
is supported by every neccessary elements needed to
Sustain the Charge. See 397. U.S. at P. 364. Fn. 2. ART
I §§ 7, 15, 16. VI XIV Rights.


## C. IN Proper Jury Instructions

At trial, The court allowed the Prosecutor to
Present the entire case improperly to the Jury as
demonstrating first and foremost, a Pattern/Identity
Conduct involving all three incidents. The Prosecution
instructed the Jury as Such:

["The Buenrostro incident is important"]

1  Because it conclusively establishes the pattern.
2  Once could be considered a random event.
3  Twice could be a coincidence, but three times
   is "apparent." When you know that there's a
4  pattern, you know there's a plan behind it.
   Okay? And that's exactly what was going on.....
5  The defendant and his girlfriend were making
6  a living Jacking these Hispanic men. It was
   like their Job.............(10 RT 553)
7

8  Now, if that doesn't raise important questions with

9  respect to the Prosecutions use of uncharged crime evid-

10 ence, and to the Deputy Attorney General Answer To

11 order To Show cause. In Petitioner case - The Perpetra

12 tor's identity was disputed in both charges and

13 uncharged crimes - that use violated the circular reasoning

14 and common plan rules. Moreover, both the former and

15 current standard instructions are materially erroneous

16 and risk "one Hundred Percent Prejudice."

17 The first Appellate District OPN. inexplicably igno-

18 red this titled, briefed claim of instructional error,

19 Refused to transfer the matter to the court of Appeal

20 with direction to resolve Petitioner claim Rule 28(g)(4).

21 Finally, Petitioner urges this court to reconsider

22 The first Appellate District harmless error evaluation

23 in light of additional record - and, Authority based

24 Factors Petitioner discussed in his writ of Habeas

25 Corpus, and Traverse.

26

27

28

# 1. ADDITIONAL ARGUMENT:

Petitioner contents The Attorney General in his Answer to order to show cause, page six (6), Line 4 & 5 he contends the State court of appeals determination was not unreasonable because any error that the Petitioner claim was harmless under Brecht v. Abrahamson, 507 U.S. 619 (1993). That is not true. Petitioner disagree.

Petitioner identified multiple errors in his case. The uncharged misconduct instructions given to the Jury, essentially stemming from the Prosecutor's and court's improper reliance on common Plan Theory in a case where the only issue was identity. "Attorney General," First line of defense in his Answer was that the CALIc. 2.50 was and is a correct statement of the Law: Petitioner disagree. Petitioner disagree to the whole Answer to show cause by The "A.G." The uncharged Buenrostro evidence was allowed to be used against Petitioner to resolve the ultimate Question at issue: Was Appellant one of the Perpetrators of the charged crimes? IF a non-identity, instruction-based rationale existed, it is up to the ("A.G") to explain it (and show why appellant's reading is unreasonable). But the ("A.G") attempt effectively concedes the Point: (1) The nature of Petitioner constitutional error involves/Provided Powerful support for the conclusion that if the Jurors had heard the testimony of how the uncharged victim — was severely beaten by all his assailants,

1  the jury would not have a reasonable doubt on the
2  charged counts. The jury deliberated for 10 hours
3  before returning with a guilty verdict on all eight
4  counts. (2) CALJIC No. 2.50 improperly allowed the jury
5  to infer appellant's identity in and therefore guilt of
6  the charged crimes. This was unauthorized criminal
7  disposition reasoning.   Ewoldt's rule against use
8  of common plan theory to prove identity and there-by
9  effectively lowered the prosecutions burden of proof.
10 (3) The instruction told the jury it may use the uncharged
11 crimes evidence and common plan theory to find
12 "the charged and uncharged offenses have such a 'clear
13 connection with each other that it may be inferred
14 that appellant committed them all." That is precisely
15 Petitioner point here, and that is why error is established
16 and Denied Petitioner his federal and state Due Process
17 Right to a Fundamentally Fair Trial. In People v.
18 Partida Nov. 21, 2005. S127505 __ Cal. 4th __ http/www
19 courtinfo.ca.gov/opinions the court held that even if
20 the defendant objects at trial only on evidence code
21 Section 352 grounds (i.e, more prejudicial than probat-
22 ive) on appeal the defendant may additionally argue that
23 the effect of the error was to deny due process.
24 The Partida holding should apply here as well.
25    At Petitioner Trial, Defense counsel objected to
26 the uncharged crime evidence, arguing inter alia the
27 similarities were insufficient to establish identity,
28 Common Plan' was not at issue and should not be an

available theory where the defendant was uniden-
tified in the uncharged incident, and the evidence
would be unfairly prejudicial to appellant, particularly
where his identity in the charged crimes was at issue
as well. (2CT 193-194; 3RT 73-77.)

These are essentially the themes of appellant's
argument before this court. Although, trial counsel
did not expressly cite Evidence Code Section 352,

the record shows the court understood counsel argu-
ment to refer to the statute. When counsel argued
appellant would be prejudiced, the court responded by
turning to the prosecutor: "Mr. Dolge, I do see some
352 danger." (3RT 76.) Finally, In Petitioner Petition,
He argued the state law errors was a fundamentally
unfair trial. See People v. Partida, supra.


## ReversaL Is Necessary

The Attorney General in His Answer He offers little
more than a relatively beneficial description of robber-
ies/carjackings, with similarities that are not even
close to being "So Unusual and distinctive as to
be like a signature." [Citation]" People v. Ewoldt,
supra, 7 Cal. 4th 380, 403.) Attorney General describes what
is essentially "a common, unremarkable, hackneyed modus
operandi." (Imwinkelried, § 3:14, P. 75, Fns. omitted, citing
inter alia People v. Guerrero (1976) 16 Cal. 3d 719, 728-729,
People v. Alcala (1984) 36 Cal. 3d 604, 632-633.) Moreover
"the alleged similarities break down under examination."

1  (id. at 632.) The Buenrostro robbers were two men
2  and one women; The Obregon robbers were three
3  men and one woman; and the Saucedo robbers were
4  one man and two women. This "similarity" alone points
5  to no individual as a Consistent Perpetrator.
6  As for the weapons used; [12-inch Revolver V.S 18-inch
7  assault gun replica] and the proximity of time when
8  these events occurred, and the Fact the Buenrostro gun
9  that was used against Buenrostro was certainly not
10 the paintball gun used in the charged crimes weighs
11 strongly against identity. And "dissimilarities are
12 substantial... People V. Guerrero, supra, 16 Cal. 3d at
13 729.) Saucedo and Obregon alleges they were held inside
14 the 89th Avenue apartment; Buenrostro was not taken there.
15 Only Buenrostro was repeatedly beaten, taken from East Oak-
16 land to West Oakland and left in apparent unconsciousness
17 on the ground. In sum, "A.G" fails to spell out in what
18 way the uncharged and charged crimes are so strikingly
19 similar as to point clearly to Petitioner as one of the
20 Perpetrators in the former:

21          [The Prosecutor's Common Plan Theory
22          Was unavailable, Because Common Plan Eviden-
23          ce Is Not Used To Prove The Defendant's
24          Identity]

25      Petitioner Point's to the record in limine hearing,
26 showing how the Prosecutor expressly and improperly,
27 Per Ewoldt - relied on Common Plan theory to argue the
28 Preliminary Fact of Petitioner's identity in the Buenrostro

1      incident; the trial court erroneously accepted this

2  theory. (3 RT 66-71) The Prosecutor's argument was:

3

4          In context, the Prosecutor was saying
    that there were sufficient points of identif

5      ication such that the jury, if it were to
    determine he committed the charged offenses,

6      could infer he committed the uncharged offenses,
    and then the jury could use that evidence to

7      say, 'Well, clearly there is no coincidence. This

8      was execution of a plan.' (RT 69)

9

10  ("A.G.") Attorney General ignores the true context in

11  his Answer: the Prosecutor was addressing the court's

12  question: "what evidence is there specifically from

13  which a jury could find by a Preponderance of the evid-

14  nce that Mr. Scott was involved [in the uncharged incid-

15  ent]?" (3 RT 69) While the Prosecutor responded by citing

16  "similarities between the charged and the uncharged" as

17  "helpfull" (3 RT 69), he merely repeated the argument from

18  his "moving papers" (3 RT 68, 69-71) which, as Petitioner

19  explained in the previous section, focused on common

20  plan theory, not identity. And the Prosecutor's conclusion-

21  appellant was "involved" with a "group" of people committing

22  the charged and uncharged crimes (3 RT 70-71) was

23  not directed at appellant's "signature" as perpetrator

24

25

26

27

28

# IN CONClusion

For the reasons explained above, Petitioner Respectfully request that this Court Grant an evidentiary Hearing or a Reverse In Full...

Respectfully Submitted

Date: 8-3-08

Antonio Scott IN Pro se

United States District Court Northern
District of California        ~~FILED~~

~~08 AUG -6 PM 12: 36~~

~~LLOYD W. WILKING~~
~~CLERK, U.S. DISTRICT COURT~~
~~NORTHERN DISTRICT OF CALIFORNIA~~

Antonio Scott
    Plaintiff or Petitioner

J.

                     Case Number: C07-4279 CRB (PR)

Tom Felker
    Defendant or respondent

                  Proof of Service

I hereby certify that on __8-3__ , 20 __08__. I served a copy
of the attached __Supplemental Brief__, by placing a copy
in a postage paid envelope addressed to the persons hereinafter
listed, by depositing said envelope in the United States Mail
at __High Desert State Prison Susanville, CA__ 96127

    Office of The Clerk, U.S District Court
    Northern District of California
    450 Golden Gate Avenue
    San Francisco, CA 94102

        And:
            Office of The Attorney General
            455 Golden Gate Ave, Suite 11000
            San Francisco, CA 94102 - 7004

I declare under penalty of perjury that the foregoing is true & correct

Antonio Scott #V42330
H.D.S.P. C1-118
P.O. Box 3030
Susanville, CA
96127

U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA



## STATE PRISON

Office of The Clerk, U.S. District Court
Northern District of California
450 Golden Gate Avenue
San Francisco, CA  94102

HIGH DESERT STATE PRISON





neopost

049..
$0
08/0
Mailed Fi
US Pi

C. MMA    8/3/08

LEGAL MAIL